18862. LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE *v.* BURKETT.

Decided July 10, 1928.

*Porter & Mebane,* for plaintiff in error.
*Maddox, Maddox & Mitchell, W. M. Sapp,* contra.

Luke, J.   Carl Burkett sued the Life and Casualty Insurance Company of Tennessee on a policy issued by that company on the life of James Robert Burkett, in which plaintiff was beneficiary. The jury found for the plaintiff, the court overruled the defendant's motion for a new trial, and the movant excepted.

■   There was a special demurrer to the petition, upon the ground that copies of material parts of said policy, to wit, the application for insurance and the answers of the insured to the medical examiner, were not attached to the petition.  The policy provides that "This policy and the application therefor shall constitute the

entire contract," and that "This policy is subject to the conditions and provisions stated on this and the following pages hereof, which form a part of this contract as fully as if recited at length over the signatures hereto affixed." The Civil Code (1910), § 5541, provides as follows: "In suits to recover money on an insurance policy it shall not be necessary to attach a copy of what may be written or printed upon the policy, except what appears upon the face or in the body of the policy." It is deducible from the language of the court in the case of *Southern Mutual Insurance Co.* v. *Turnley,* 100 *Ga.* 296, 300 (27 S. E. 975), that a copy of only such stipulations as are "embraced in that part of the policy which precedes the signatures of the officers by whom it is executed" need be attached to the petition as an exhibit. In this case a copy of what appears upon the face of the policy over the signature of the president of the company is attached to the petition. Therefore the above-stated ground of the demurrer was not good, and the court correctly so held. The overruling of the ground of the demurrer which attacks parts of the notice to produce, as failing to describe with sufficient definiteness the receipts and other papers connected with the policy, was not reversible error. It was insisted that the court erred in overruling the motion to strike the notice to produce, because the notice was contained in the plaintiff's petition. In the law as to notice to produce papers we see nothing that inhibits the giving of such notice in the petition. See Civil Code (1910), § 5837 et seq.

█ There are two special grounds in the motion for a new trial. The first of these is, that, after ruling that Mrs. Hester Burkett, widow of the insured, should produce the family Bible purporting to show his age, under a subpœna duces tecum issued at the instance of the insurance company, the court erred in holding that counsel had the right to examine Mrs. Burkett only in regard to the said Bible. After Mrs. Burkett identified the said Bible, and testified that it appeared therefrom that her husband was born January 9, 1862, the court refused to permit the insurance company to prove by her that her husband had been afflicted with various serious diseases, and had been attended by doctors. "A female witness, though residing in the. county, is not obliged, as a general rule, to attend court in order to testify. The statute makes provision for the examination of such witness by interrogatories. Such a witness, however, may be compelled to attend by order of the court, for sufficient

reasons assigned." *Bennett* v. *Patten,* 148 *Ga.* 66 (95 S. E. 690), citing *Powell* v. *Augusta &c. R. Co.,* 77 *Ga.* 192, 198 (3 S. E. 757); *Augusta &c. R. Co.* v. *Randall,* 85 *Ga.* 297 (5), 315 (11 S. E. 706). "While the statute permitting the interrogatories of such witnesses to be taken does not exempt them from attendance upon court, its provisions should be followed, unless it be shown to the court that it is necessary to have their personal attendance." *Augusta &c. R. Co.* v. *Randall,* supra, cited in *Estill* v. *Citizens &c. Bank,* 153 *Ga.* 630 (113 S. E. 552). The court's ruling was in effect that it was necessary for the witness to produce the family Bible in court and testify in regard to it, but that she should not be compelled to testify as to other matters. We see no error in this ruling. It does not appear that any attempt had been made to get the testimony of the witness by interrogatories. In short, we do not see how, within the meaning of the law, the failure of the insurance company to exercise its right to get the testimony of the witness in the usual manner designated by the statute can create a necessity for compelling her to come into court and testify at length. The judge had the right to limit the testimony of the witness as he did, and this ground of the motion is without merit. The only other ground in the amendment to the motion for a new trial is controlled adversely to the plaintiff in error by what has been said in regard to the first special ground.

■ As stated in the brief of counsel for the plaintiff in error, "The main contention of the defendant company in this case is that the evidence shows, without contradiction, that the insured, James Burkett, was guilty of fraud and material misrepresentations in obtaining the policy sued on, and that the misrepresentations were material to the risk, and that the verdict in the case is contrary to the law and contrary to the evidence."

The first alleged false representation appears in the application for insurance in these words: "My name is James Robert Burkett. I was born in Tennessee, Sept. 1, 1867. My age nearest birth date is sixty." It is alleged that on June 26, 1926, the date on which the insured signed the application containing this statement, he was sixty-four years, eight months, and twenty-five days of age; that the type of policy issued was not written by the company on the life of any person over sixty years of age; and that the policy would never have been issued but for the said false representation.

According to the Bible introduced in evidence, the insured was born January 9, 1862. It also appeared that the insured had represented his age in applications to other insurance companies in such wise as to make him over sixty years old when he applied for the policy in the instant case. His wife testified that the record in the said Bible had been "traced from the old family Bible of his mother into our Testament, and from that Testament into this Bible;" that she did not know whether it was correctly transcribed; that the Bible in evidence had been in the insured's possession for about fifteen years, and that he had said it was correct. Dr. W. M. Painter, the examining physician for the insurance company, testified: "I think Mr. Burkett told me at that time his age was fifty-nine or sixty, that he did not remember which; that it had been changed in some way, and that he was either fifty-nine or sixty was the best of his recollection. . . As well as I remember, he said he was either fifty-nine or sixty. . . I don't think he knew about the date of his birth. . . He said he thought he was either fifty-nine or sixty. . . He told me he was uncertain about the year he was born." Frank Haire testified: "My son was agent for the Life and Casualty Company. He had his desk on the east side, and I had my desk on the west side of the same office. My son, Henry, Dr. Painter, and Carl Burkett and Jim Burkett were present in my office. In that presence Jim Burkett said with reference to his age, when he got to answering these questions, "I can't tell you whether I am nearer fifty-nine or sixty;" and he turned to me and said, "It was an old Bible and transcribed." . . There in the office where my son, the agent of the company, was present, he said he did not know whether he was nearer fifty-nine or sixty; and I said, "You ought to be as positive as you can about it, for this is going down on paper;" and he says, "I don't know. . . I will tell you why. . . The ages were put down in the Bible by my daughter, and Mrs. McCurdy transcribed it from another book, and it was on the fly leaf of the Testament, and it got worn, and my daughter took it off of that and put it on the family Bible."

From the evidence the jury had the right to conclude that both the agent who solicited the insurance and the medical examiner who examined the insured knew, at the time the alleged false representation was made, that, for stated reasons, the insured did not know what his age actually was. Notice to these agents was notice to the

company, and the company is estopped from asserting that the insured made fraudulent representations as to his age. *Mutual Life Ins. Co.* v. *Brown,* 34 *Ga. App.* 301 (129 S. E. 307) ; *Johnson* v. *Ætna Ins. Co.,* 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. R. 92) ; *Blackstock* v. *Jefferson Ins. Agency,* 23 *Ga. App.* 642 (99 S. E. 142) ; *Rome Ins. Co.* v. *Thomas,* 11 *Ga. App.* 539 (3) (75 S. E. 894) ; *Atlas Assurance Co.* v. *Kettles,* 144 *Ga.* 306 (87 S. E. 1).

■ It is next contended that the insured, in his application for insurance, falsely stated that he had submitted no application for medical examination for life insurance upon which he had not been notified of the action thereon of the insurer. From the evidence it appears that when the application in the instant case was signed by the insured, he had then pending an application for industrial insurance in the Southern Insurance Company of Nashville, from which he had not heard, or rather on which a policy was not to be issued until later. We think that under all the evidence in this case the materiality of the representations made in the application raised an issue of fact for the jury. See *Mass. Life Asso.* v. *Robinson,* 104 *Ga.* 256, 287 (30 S. E. 918, 42 L. R. A. 261) ; *Phenix Ins. Co.* v. *Fulton,* 80 *Ga.* 224 (4 S. E. 866).

It was next contended that the insured falsely stated in his application for insurance that no application of his for life insurance had been declined or postponed, and that no contract, other than the one applied for, had ever been issued to him. It appears that an industrial policy in the Metropolitan Life Insurance Company for $75 had been applied for, issued and canceled. The materiality of these representations was for the jury. See authorities cited above. A similar defense to the two foregoing is that the insured stated in his application for insurance that he was not applying for other insurance, whereas he had pending, with the Southern Insurance Company of Nashville, Tennessee, his application for insurance with that company. As indicated above, we are of the opinion that the materiality of this representation was for the jury.

■ It is alleged that the insured falsely stated in his application for insurance that he had had no disease and had received no medical or surgical attention within the past five years; it being averred that within that time he was treated for typhoid fever by Dr. Rollins, and also that he was afflicted with a severe case of influenza and grippe in February, 1926. From Dr. Rollins's testimony it

appears that the insured was dangerously ill with typhoid fever in 1921, and that the doctor "visited him every day, sometimes twice a day, from September 5, 1921, to September 19, 1921, inclusive;" also that "in his typhoid fever the last visit was on the 21st day of June, 1921." In this state of the record it is impossible for this court to say whether or not the insured had typhoid fever within five years from his application for insurance bearing date of June 26, 1926. We find no evidence in the record that the insured had influenza and grippe in February, 1926.

■ It is insisted that the insured falsely stated in his application for insurance that since childhood he had not had grippe, influenza, or pneumonia, or any disease of the heart. The plea alleges that four years prior to that statement he had pneumonia for a period of one hundred days, and was attended by Dr. Rollins; that he had grippe and influenza in February, 1926; and that at the time of making the alleged false statement, and for a long period of years, he had a disease of the heart. The record fails to sustain the defense that he had pneumonia as alleged. In his application for industrial insurance in the Southern Insurance Company of Nashville, Tennessee, he stated that he was last sick in March, 1920, and that his sickness was grippe. The record does not show that he had grippe and influenza in February, 1926. In view of the other evidence in the case, the materiality of the representation as to not having grippe was a jury question. The question as to heart disease was certainly a jury question, especially in the light of the testimony of the medical examiner for the insurance company that he made a thorough examination of the applicant and found nothing wrong with applicant's heart or heart action. Jerry Burch testified that the insured had pneumonia "about a year after he had typhoid fever, . . along there." Frank Haire testified that the insured had pneumonia in October before he died in January. This witness further swore: "I knew when he was sick with typhoid fever, when Dr. Rollins waited on him. He was never sick any more to my knowledge. I was living within two miles of him. I saw him frequently two or three times a week. Prior to his illness before he died in January, I was constantly associated with him." It appears that the jury had the right to conclude that the insured had pneumonia after the date of his application, which was June, 1926. Again, in view of the perfectly clean bill of health

given the insured by the company's medical examiner, we think that even if the jury concluded that there had been a misrepresentation as to the insured's having pneumonia, they yet had the right to say whether or not such misrepresentation was material.

■ It is contended that the insured falsely stated in his application for insurance that he was in good health, for the reason that he then had dropsy and heart disease. Regardless of any other testimony in the case, the jury had the right to conclude, under the following testimony of Dr. Painter, the company's medical examiner, that the insured was in good health at the date of his application: "I found nothing wrong with his heart, heart action; neither did I find any dropsical condition or anything of that sort in this man."

■ It is contended that the insured made a false and material misrepresentation in stating in his application that he did not have dropsy, and had not had it since childhood. Dr. Ault, who examined the insured for another insurance company on April 24, 1926, testified that his heart condition indicated dropsy. He further swore, however, that he did not see the insured when he had dropsy, and would not swear he had it. The testimony of Dr. Painter, referring to June 26, 1926, and quoted above, sustains the jury's view of this matter.

■ It is contended that the answer of the insured to a question propounded by the company's medical examiner, that he had not had any disease or injury requiring a physician or surgeon, other than as above stated, was false, fraudulent and material; it being alleged that the insured had had typhoid fever and pneumonia. The question as to pneumonia has already been discussed above in the sixth division of this opinion. Since the undisputed evidence of Dr. Rollins is that the insured had a very severe and protracted case of typhoid fever in 1921, which nearly resulted in his death, and since this illness is especially stressed by the plaintiff in error, we shall briefly discuss this feature of the case. Dr. Rollins testified: "He recovered from the typhoid; got well apparently; got to where he could work and go out. I never saw anything to indicate there had not been a complete recovery. He was recovering when I dismissed him. I thought at the time of my last visit he was going to get well, that all he needed was proper nourishment and attention. I saw him at intervals after that. I never saw any indications of any effects of typhoid fever." Dr. Painter, who ex-

amined the insured for the company, testified: "When I examined this man for insurance I did it conscientiously. Nothing was the matter with him that I found. I did not see any evidence of any chronic disease, or drosy, or anything of that kind. I took a specimen of his urine and sent it to the company for analysis. . . I found nothing wrong with his heart, heart action; neither did I find any dropsical condition, or anything of that sort in this man. I thought he was a good risk. . . I made a thorough physical examination of him, heart· soundings, and blood pressure, and everything."

We can not say that the jury did not have the right to conclude from the testimony of Dr. Rollins that the insured entirely recovered from typhoid fever; and from the testimony of Dr. Painter the jury had the right to believe that the insured was a good risk when examined by him. It appears from the record that Dr. Rollins found that the insured had a bad heart and dropsy "one, two, or three months prior to his death;" that this was during his last illness; and that he died of dropsy. In this connection Dr. Rollins testified: "That sort of condition might set up within a few weeks sometimes, and for several months prior to that he might not have known or anticipated any such trouble as that. Two or three months prior to that he might not have developed any symptoms that could have been attributed to this cause at all. From June 21, 1921, up to that date, I know of no trouble that he had." It is uncontradicted that the insured stated in his application for insurance that he had not been attended by physicians, when, as a matter of fact, more than one had attended him. These representations, as well as the representations as to the insured's health which were false, are governed by the rule that the materiality of false representations, when not indisputably established by the evidence, is a matter for determination by a jury. *Brown* v. *Mutual Ins. Co.*, 29 *Ga. App.* 794 (1), and citations. We are aware that the officers of the plaintiff in error testified that each alleged false representation was material; yet since the materiality of these representations was a conclusion and a question for the jury, the jury were not bound to accept this testimony. See *Brown* case, supra, 795 (5). In those cases in which the court has held misrepresentations material as a matter of law, the materiality of the misrepresentations was unquestioned. The following cases which were re-

lied upon by the plaintiff in error belong to that class: *Jefferson Standard Life Ins. Co.* v. *Henderson,* 37 *Ga. App.* 704 (141 S. E. 498) ; *Metropolitan Life Ins. Co.* v. *James,* 37 *Ga. App.* 678 (141 S. E. 500) ; *Sovereign Camp of Woodmen of the World* v. *Parker,* 36 *Ga. App.* 695 (138 S. E. 86) ; *Metropolitan Life Ins. Co.* v. *Shaw,* 30 *Ga. App.* 97 (117 S. E. 106).

Very briefly stated, our view is that there was some evidence to support the verdict, and that for no reason assigned should the judgment be reversed.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*