25161. METROPOLITAN LIFE INSURANCE CO. *v.* COOPER.

DECIDED JULY 31, 1936.

*Ellis & Ellis,* for plaintiff in error.

*R. L. Maynard, Hollis Fort, Hollis Fort Jr.,* contra.

STEPHENS, J. C. T. Cooper brought suit against the Metropolitan Life Insurance Company, alleging that the defendant, on December 6, 1933, issued two policies in the same terms insuring the life of his brother Albert Cooper, each in the sum of $1000, and naming the plaintiff as beneficiary; that Albert Cooper died January 3, 1934, and due proofs of death were furnished to the company; that the premiums on the policies were in good standing; that a copy of one of the policies was attached to the petition; and that the defendant refused to pay either of the policies. The defendant answered, admitting the issuance of the policies and the payment of the premiums, but neither admitting nor denying the date of the death of the insured and the furnishing of proofs of death, admitting its refusal to pay the policies, and denying any liability under them. It alleged that on November 4, 1933, Albert Cooper filed with the defendant through its agent, W. T. Johnson, an application, signed by Cooper, for the policies, which provided: "It is understood and agreed: That the foregoing statements and answers are correct and wholly true, and, together with

the answers to question on part B hereof, they shall form the basis of the contract of insurance, if one be issued. . . That the Company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the Company during the lifetime of the applicant, in which case such policy shall be deemed to have taken effect as of the date of issue as recited on the first page thereof." It was also alleged as follows: Each of the policies provided that "This policy is issued in consideration of the application therefor, copy of which application is attached hereto and made a part hereof," etc., and that photostatic copies of the policies and of the application were attached to and made a part of the answer. In the application the following question was asked of the applicant: "Present condition of health?" to which he answered, "Good." The following questions were asked and answers made: "When last sick?" A. "June 1917." Q. "Nature of last sickness?" A. "Intestinal intoxication." Q. "How long sick?" A. "Two days." Said answers were misstatements of material facts which were wilfully concealed by the applicant, as he was sick and was treated by A. C. Primrose, a physician, on or about October 18, 1933, and said doctor diagnosed his trouble as pyelitis, or an infected kidney. This trouble cleared up in about two weeks, but later gave the applicant further trouble about the middle of November, before and after the policies were issued. The following question was asked the applicant: "Have you been attended by a physician during the last five years?" to which the answer was "No." This answer was a misstatement and wilful concealment by the applicant of facts vitally material to the nature, extent and character of the risk, as he had been treated by Dr. Primrose in October, 1933, as hereinbefore set out. The applicant was asked, "How much time have you lost from your work through illness during the last five years?" to which he answered, "None." This was a misstatement and wilful concealment of material facts, as he had been sick and unable to work during the months of September, October, and November. After the application had been filed, but before the delivery of the policy, the assured was treated by Dr. E. B. Anderson for pneumonia and other troubles and he spent part of his time in a hospital and part of the time was con-

fined to bed in his brother's home. The applicant was under an affirmative duty to disclose his illness to the defendant, which he failed to do. The misrepresentations as hereinbefore set out were wilful, and were a concealment of facts which materially affected the nature, extent, and character of the insurance risk, and rendered the policies sued on absolutely null and void.

The evidence showed the following: On November 4, 1933, the insured was examined by Dr. E. N. Campbell, the examining physician of the defendant. Dr. Campbell testified that he examined the heart, lungs, kidneys, and other parts of the body, and found nothing wrong; that he gave the insured a thorough and careful physical examination; that he had no influenza and no organic trouble; and that his kidneys and heart were normal. He further testified: "It depends on how long a man has been suffering from pyelitis, as to whether or not he would be a fit insurance risk. It depends on how long he has recovered from it. It is true that one attack increased the liability of a second attack. It is like pneumonia; but if he would have recovered from it long enough, that would not exclude him from insurance. A man who has an attack of pyelitis on the 15th day of October and his condition is satisfactory on the 30th day of October, and then had an attack in November, would not be a fit insurance risk. . . A man that had an attack of influenza, there would not have been a perceptible indication in the valves of the chest if the condition had cleared up. If he had had it when I examined him, there would have been. Pyelitis is a kidney trouble, pus in the kidneys."

Dr. A. C. Primrose testified that on or about October 15 to 30, he treated the insured several times for pyelitis; that he made a physical examination of the insured on November 8, at which time the insured had a temperature of 104, that he took a blood count and made a gastric analysis, and found that his blood and his stomach were not in normal condition; that he sent the insured to his brother's house until he got over the flu; that in the meantime the blood came back as negative, and was put down as flu; that he did not complete his examination, on account of not taking an x-ray; that he saw the insured in the latter part of November, when he was sick in bed with pneumonia, and had another doctor with him, and "from the history he gave me, together with his examination, the best I could tell I would say he was suffering with chronic

gastritis or a malignant cancer of the stomach;" that "a man in that condition would not be a good insurance risk;" that "a man suffering with pyelitis in the middle of October would not be a good insurance risk on November 4, 1933;" that "a man who has influenza beginning November 8, and later developed pneumonia, would not be a good insurance risk on December 6, 1933, without further examination."

Dr. E. B. Anderson testified that he saw the insured on November 21, 1933, when he was suffering from bronchial pneumonia; that he would not pass a man for insurance who had an acute infected kidney twenty days before examination; and that an infected kidney could be a temporary condition, depending on whether it is acute or chronic. In the proofs of death furnished to the defendant by the plaintiff this doctor certified under oath, in answer to questions, as follows: "Nature of condition: possibly intestinal cancer, pneumonia. Dated: 11/18/33, to 12/15/33. Duration 4 wks. Result: improved." "What was the immediate cause of death? This man came to me acutely sick with some abdominal condition. He developed a bronchial pneumonia, got well of that, but had some abdominal symptoms, possibly cancer." In the proofs of death Dr. R. C. Montgomery certified under oath that the cause of death was: "Bowel infection, secondary to pneumonia. Duration, from personal knowledge, 10 days. Duration, from history given, 30 days. Contributory or secondary, none;" and that he had attended the insured from December 22, 1933, to January 3, 1934, the date of death.

1. The two policies were dated December 6, 1933. The same application was attached to both. It was signed by Albert Cooper, and contained the questions and answers as set out in the defendant's answer to the petition. Among other things, the applicant stated that he had not been attended by a physician during the five years next preceding the date of the application, November 4, 1933. This statement was shown to be untrue. Dr. Primrose treated the applicant for pyelitis, a disease of the kidneys, from October 15, to October 30, 1933. The testimony as to the seriousness of pyelitis was not very strong, but as far as it went it indicated that this kidney disease might influence an insurer in determining whether or not to insure a man afflicted with it. Dr. Primrose testified that pyelitis could be cured in two or three

weeks, but that it was likely to recur within a short while, and he would not be a good insurance risk on November 4, 1933. Dr. Anderson testified that he would not pass a man for insurance who had an acute infected kidney twenty days prior to examination. The testimony of Dr. Campbell was that he found nothing the matter with the insured at the time of the application. It is inferable from this that the insured had recovered from the effects of pyelitis and flu. It is clearly inferable from Dr. Campbell's testimony that a person who had recovered from these diseases, if the recovery had been for a sufficiently long time, would be a good insurable risk. In the proof of death submitted by Dr. Montgomery it appears that the insured died from "bowel infection, secondary to pneumonia." In the proof submitted by Dr. Anderson the death was "possibly intestinal cancer, pneumonia." There is no indication that the insured died from the effects of pyelitis. It appears in his application that he stated that Dr. Sam Wise was his physician. The insurance company could have made inquiry of Dr. Wise as to the insured's condition. There is no evidence as to whether the insurance company consulted Dr. Wise or not.

While there is evidence very strongly indicating that the misrepresentations made by the insured in the application were as to matters material to the risk, and therefore voided the policy, the evidence when taken in its entirety does not demand this inference as a matter of law. The materiality of such misrepresentations is a question of fact for a jury. *Life & Casualty Ins. Co.* v. *Burkett,* 38 *Ga. App.* 328 (144 S. E. 29) ; *Metropolitan Life Ins. Co.* v. *Busby,* 42 *Ga. App.* 808 (157 S. E. 354). There is no provision in the policy that the insured must be in good health upon the delivery of the policy, and that if the insured is not in good health at that time the policy will be void. There is no merit in the contention of the defendant that the policy was void on the ground that the insured was not in good health at the time of its delivery. The verdict for the plaintiff was authorized. The court did not err in overruling the defendant's motion for new trial, based on the general grounds only.

*Judgment affirmed. Jenkins, P. J., concurs. Sutton, J., dissents.*