## PRESTON *v.* NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY.

218

No. 14481.   JUNE 12, 1943.

220

*Hall & Bloch,* for plaintiff.

*Martin, Martin & Snow,* for defendant.

BELL, Presiding Justice. (After stating the foregoing facts.) Since the parties occupy in this court the same relative positions

that they did in the trial court, they may be referred to as *plaintiff* and *defendant*. We shall not deal with the assignments of error seriatim, but will endeavor to state the controlling statutes and principles, and to apply them appropriately to the questions presented. In view of the plaintiff's contention that the laws relating to life insurance were materially changed by statutes enacted in 1912 and 1927, it may be helpful to quote at the outset certain provisions of the Code, and to refer briefly to their origin. Let it be noted also that the case does not present any question as to waiver or estoppel, nor did the Court of Appeals treat the case as one involving fraud.

"Every application for insurance shall be made in the utmost good faith, and the representations contained in such application shall be considered as covenanted to be true by the applicant. Any variation by which the nature, extent, or character of the risk is changed shall void the policy." Code, § 56-820. "Any verbal or written representations of facts by the insured to induce the acceptance of the risk, if material, must be true, or the policy shall be void. If, however, the party shall have no knowledge, but shall state on the representation of others, bona fide, and shall so inform the insurer, the falsity of the information shall not void the policy." § 56-821. The last sentence of this section has of course no bearing upon the present case. "A failure to state a material fact, if not done fraudulently, shall not avoid the contract; but the wilful concealment of such a fact, which would enhance the risk, shall void the policy." § 56-822. The Court of Appeals held this section inapplicable, in view of the positive representation; and this ruling is not challenged. Accordingly no decision will be made as to its applicability, although the words "enhance the risk" may be pertinent in construing other sections. These sections are contained in the chapter of the Code relating to fire insurance, but in the chapter following, relating to life insurance, it is declared that "The principles before stated as to fire insurance, wherever applicable, shall be equally the law of life insurance." Code, § 56-911.

All of the foregoing provisions appeared in the Code of 1863, and in each of the intermediate Codes, substantially as here quoted. For example, see Code of 1863, §§ 2752, 2753, 2754, 2771. As we shall see later, they changed the common law in some respects.

In 1912 the General Assembly passed an act establishing an in-

surance department, in section 21 of which it was declared: "That all insurance companies, except companies writing policies of insurance on the industrial plan, writing life insurance in this State, including fraternal orders and all other associations, shall be required to have made a strict medical examination of each and every person applying for life insurance. Such person shall submit to such reasonable rules and regulations as may be prescribed by such insurance companies for the purpose of making such examinations; and after a policy is issued on the life of such person, the beneficiary of such policy shall be entitled to collect the amount of such policy under the terms of the contract, . . unless the applicant . . has been guilty of actual fraud or has made such misrepresenta- tions in procuring said policy, which misrepresentations change the character and nature of the risk as contemplated in the policy so issued by the company. All statements, covenants, and repre- sentations contained in applications for insurance shall never be held or construed to be warranties, but shall be held to be repre- sentations only." Ga. L. 1912, pp. 119, 130. In 1927 the act of 1912 was amended by striking section 21 and substituting the provisions that now appear in the Code, § 56-908, as follows: "All persons applying for life insurance in a life-insurance com- pany writing life insurance in this State shall submit to such reasonable rules and regulations as may be prescribed by such in- surance company; and after a policy shall be issued on the life of such person, the beneficiary of such policy shall be entitled to col- lect the amount of such policy under the terms of the contract when it shall mature, unless the applicant or beneficiary shall have been guilty of actual fraud or shall have made material misrepresenta- tions in procuring such policy, which representations change the character and nature of the risk as contemplated in the policy so issued by the company. No statements, covenants, or representa- tions contained in applications for insurance shall ever be held or construed to be warranties, but shall be held to be representations only." Ga. L. 1927, p. 223. It is also declared in the Code, that all life insurance policies issued upon the lives of persons within this State which contain any reference to the application for insur- ance, either as forming a part of the policy or as having any bear- ing on the contract, shall contain or have attached to the policy a correct copy of said application signed by the applicant; and un-

less so attached and accompanying the policy, no such application shall be received in evidence either as a part of the policy or as an independent contract in any controversy between the parties to or interested in the policy, nor shall it be considered as a part of the policy or contract between such parties. § 56-904. This section was based upon an act passed in 1906 (Ga. L. 1906, p. 107), relating to both fire and life insurance contracts; and for a codification of it as applied to fire insurance, see § 56-811. It has been held that this statute does not apply to fraternal insurance. Code, §§ 56-1606, 56-1610; *Fraternal Life & Accident Association* v. *Evans,* 140 *Ga.* 284 (78 S. E. 915). The instant case, however, does not involve a fraternal contract.

Now, what are the facts to which these laws shall be applied in the instant case? The policy was issued on September 10, 1940, upon an application signed by the insured on September 5, a copy of which was attached to and made a part of the contract. The insured died from a cancer in his mouth, on March 5, 1941. The evidence further showed without dispute that the insured did make a false representation as alleged, in that, excepting an operation for appendicitis in 1923, he stated he had never consulted any physician other than Dr. Bailey, of Newnan, Georgia, in 1919 for influenza, when as a matter of fact he had consulted Dr. C. C. Harrold five times in 1937 for a keratosis on his lip, and was given radium treatment by Dr. Harrold on three of these occasions. Therefore the question is, not whether there was a false representation, but whether the matter misrepresented was shown to be material, and of such character as to void the policy, under the laws of this State. This same physician, and three others, testified to the effect that a keratosis is a piling up and hardening of the tissues, and is generally regarded in the medical profession as precancerous, in that it may be the beginning of a cancer, or it may not. The last time Dr. Harrold saw the insured in reference to this condition was on August 10, 1937, when he applied the radium treatment the third time, and requested the insured to return to him again in three weeks, which the insured failed to do. He did not discharge the insured on August 10, 1937, "as entirely well." The next time he saw the insured was on October 26, 1940, which was only a month and twenty-one days after the application for insurance had been signed. The insured then, that is, on October 26, 1940, had a

cancer on the floor of his mouth, "under the tongue and just behind the teeth." The witness further testified that when he saw the insured at this time (1940), his lip was in a perfectly healthy condition, and the witness did not believe that the place on his lip in 1937 had anything whatever to do with the cancer that was found in 1940. They were in the same man, but the one did not cause the other; and the witness would have told any one that, as result of his observation and treatment in 1937, he did not think the insured had a cancer at that time. But the same witness further, and partly in explanation, testified: "When I say it had no connection, it is not an extension from one to the other. Remember, I made the statement that I warned this man about smoking. I think smoking probably caused both. So while I can say there was no connection between the two, I think probably both had the same cause. Both had the same cause, but one was not the result of the other. If this had been a cancer of the lip, which I think it was not, but if it had been a cancer of the lip rather than a keratosis, it would not extend into the floor of the mouth under the tongue. There was apparently no physical connection between them. Cancer does not go that way. Now if we wish to suppose, for the sake of argument, that I was wrong and this was a cancer of the lip and that was the thing that finally killed him, it would have killed him by destroying large areas of his lip and a gradual extension of the ulceration down into the chin and extension down into the tissue of the mouth. His lip was just as smooth as my eyeglass. The condition which I found on October 26, 1940, was very definitely cancer. There was no question about it in my mind. My recollection is that I did not even take a piece of tissue to be examined; it was so characteristic. It was one quarter of an inch wide and three quarters of an inch long, and I never measured the depth, but I would say one eighth of an inch deep. I have no way of knowing when the first symptom of that appeared under his tongue. No, I generally ask the question, but I did not in this case ask the man how long he had had it. If I did, I have no record of it. Some cancer takes twenty to thirty years; some kills within a few months. We can't have any general rule about it. The condition I found in 1937 was not cancer. I did not consider it cancer. I considered it precancerous. I so told Mr. Preston, and I told him he had to stop smoking. I did not examine a sec-

tion of the keratosis. A keratosis is as thin as tissue paper. A sort of thing a man would bite off and spit out, like a piece of cigarette paper. Keratosis sometimes has a malignant base. That is no longer a keratosis; it's a cancer. When you start noticing, induration, hardening, at the base, you have a suspicion of it being cancer. There was no induration at this time. He told me he smoked between twenty and thirty cigarettes every day for the past three or four years, and I think he had started smoking at the age of thirteen or fourteen. I warned him about smoking. I told him I thought that caused the irritation of his lip, and if it was persisted in it might become cancerous. My idea in suggesting to him that he come back in three weeks is that I always have patients to come back when I treat them. That is because in diseases of that nature you have to check up on them and see what is going to happen. They have no fixed way of travel; sometimes one will act one way and one another; so as a precaution I always instruct my patients to come back and let me check up on them to see whether or not they are cured." The doctor thought it would have taken at least two months for the cancer to develop into the stage in which he found it on October 26, 1940, but this was a "fulminating case" and he could not tell "exactly how long he had had it."

Another physician, who saw the insured and began treating him for the cancer on or about October 26, 1940, testified that "there must have been something there on the tenth of September." The doctor who examined the insured as an applicant for the policy testified that if he had been informed regarding the condition and treatment in 1937, he would in all probability have examined the applicant more closely, and would have looked under the tongue. Still another doctor testified: "I regard a keratosis as being precancerous in its nature. The only way to definitely determine whether or not it is cancerous is by a microscopic section. Keratosis come and go. Sometimes you grease them and they will come off by themselves, and then they will reappear and go away again. . . In the case of a keratosis which has a malignant base, that does sometimes respond to radium treatment and apparently is cured. There is no way to tell whether it is cured. . . It is usual to watch those cases over a period of time, to see whether or not there is any sign of recurrence. They are instructed to come back to see if it spreads to adjacent lymph glands. Where a kera-

tosis has a malignant base, and although on the surface it may be apparently cured, there is likelihood of the malignancy spreading to adjacent lymph glands; lymph glands that are proximate to the lesion or close to the lesion. There are lymph glands that would run from the lip down into the floor of the mouth."

While there was additional evidence, there was none more favorable to the plaintiff on the question as to the nature and character of the misrepresentation. Nor was there any conflict, the evidence as just summarized and as contained in the record being entirely consistent, as we view it. It is our opinion that under the provisions of the Code, as quoted supra, this evidence demanded a finding that the misrepresentation was such as to void the policy, and that the Court of Appeals properly reversed the judgment of the trial court.

The plaintiff relies upon the Code, § 56-908, as derived from the act of 1912, and especially the last sentence, declaring that "No statements, covenants, or representations contained in applications for insurance shall ever be held or construed to be warranties, but shall be held to be representations only." It is insisted that now, since warranties are expressly outlawed, decisions based on the pre-existing provisions can not properly be followed as precedents in a case of this character, and that especially is this true with respect to good faith in making a representation. But it is also contended that, regardless of the question of fraud or good faith, the evidence in this case presented an issue for the jury as to whether the representation was material. Still other contentions are presented, and will be determined, so far as necessary. Whether the act of 1912, in requiring "strict medical examination," changed the former law as related to that subject, the provision as to such examination was repealed in 1927, and only the remainder of the act was adopted as a part of the present Code (§ 56-908, quoted supra). We do not think this section changed the previous law, as to warranties and misrepresentations, or as to what will constitute a material statement in an application, whether it be called a warranty or a representation.

In *Southern Life Insurance Co.* v. *Wilkinson*, 53 *Ga.* 535 (10), 550, this court, after mentioning a number of authorities that were evidently based on the common law, and containing "strict rulings" in reference to warranties, said : "In many of these it was held that

the question of the materiality of the representations or misrepresentations was a matter that could not be set up by the insured or the beneficiaries in the policy; that when they amounted to warranties, the truth of them was the only question, and it could not be said that they were unimportant or immaterial so as to avoid the effect of their being untrue. We think the provisions of our Code determine this question. It is therein provided that 'every application for insurance must be made in the utmost good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which *the nature or extent or character of the risk is changed,* will void the policy.' Section 2802 [Code of 1933, § 56-820]. The next section adds: 'Any verbal or written representation of facts by the assured to induce the acceptance of the risk, if material, must be true, or the policy is void.' [Code of 1933, § 56-821.] Under these and the other provisions in the Code on this subject, we do not think that such representations as we are considering amount to warranties, so as that the policy will be vacated if any of them are untrue, whether material or not. But the proper construction is that if there be any variation in them from what is true, whereby the nature or extent or character of the risk is changed, the policy, if it makes them the basis of the contract of assurance, will be void, and that this will be so whether they are or are not wilfully or fraudulently made."

In *Mobile Fire Department Insurance Co.* v. *Coleman,* 58 *Ga.* 251 (2), it was held: "To render a contract of insurance void, under the Code of Georgia, for any matter, whether of covenant or representation, there must be some degree of materiality in such matter." In the opinion it was said: "So much of this case as turned upon dealing with the subject of materiality, whether of covenant or representation, we think, is ruled by [*Southern Life Insurance Co.* v. *Wilkinson*] 53 *Ga.* 535 [supra]. The Code governs the contract, and the construction of the Code is settled, to the effect that what is wholly immaterial to the risk is so utterly immaterial that the yea or nay of it will not render the policy void. If this be the true meaning of the Code, even an express stipulation by the parties that the validity of the policy shall depend on immaterial as well as material matters is, at bottom, an attempt to repeal the law. Such a stipulation is itself immaterial, in the

sense of being idle and nugatory. The Code, instead of relegating to the parties the subject of materiality, holds possession of it for rational and honest adjudication by the tribunals of the country. Whoever makes a contract of insurance in this State must submit to have its force and effect governed by the statutory provisions applicable to that class of contracts. There is a public policy involved in standing by substance. Insurance is *business,* and not elaborate and expensive trifling. Of course, what is in any degree material should be allowed its due effect; but the absolutely immaterial should count for nothing."

In *Mobile Fire Department Insurance Co.* v. *Miller,* 58 *Ga.* 420 (2), it was held, that even though a policy may *specify* that the application for insurance shall be considered as a warranty, and taken as a part of the contract, yet a misstatement in such application must in some way change the nature, extent, or character of the risk, in order to avoid the policy. Again, in *Supreme Conclave* v. *Wood,* 120 *Ga.* 328, 336 (47 S. E. 940), it was said: "The courts of the United States and of several of the States have for several years been trying to get away from the earlier decisions in regard to warranties in insurance policies. All of the earlier decisions, so far as we are aware, hold the insured bound by the strict law of warranty, whether the statement warranted be material or not, holding. that the parties had the right to agree that a representation was material, though in fact it was not. Latterly some of the courts have strained to construe the statements of the insured as representations wherever they were not unequivocally made warranties. Thus it has been held, that where in the application certain statements were covenanted to be true, if the policy or contract did not declare them to be warranties but referred to them as representations or statements, they would be construed as mere representations, so that, if immaterial, their falsity would not avoid the policy. . . But the courts in this State are not troubled with these finer distinctions and strained constructions. Mr. T. R. R. Cobb, the great lawyer and codifier, who incorporated the principles of law and equity into our Code, doubtless saw the great injustice and hardship to the insured under the earlier decisions of the courts. It was to change this, we apprehend, that he, in 1860, placed in the Code which was adopted in 1863 what are now sections 2097 and 2098 of the Civil Code [Code of 1933, §§

56-820, 56-821]. . . Thus it will be seen that a policy can not now be avoided upon the ground of the falsity of a representation, though warranted, unless that representation be material and the variation from the truth be such as to change the nature, extent, or character of the risk. So this court has uniformly construed these sections, as far as we can ascertain. Wherever an applicant for life insurance makes material representations in his application or examination, and covenants that they are true, under the above section of the Code, and these representations are made the basis of the contract of insurance, such contract is void if the representations vary from the truth in such manner as to change the nature, extent, or character of the risk. This is true although the applicant may have made the representations in good faith, not knowing that they were untrue. . . The representations when made, if material, are warranties under the Code, but they differ from the ordinary warranty in that their falsity does not avoid the policy unless they are material and the variation from the truth is such as to change the nature, extent, or character of the risk. It is therefore immaterial whether the warrantor acted in good faith in making them." To the same effect, see *German American Mutual Life Association* v. *Farley,* 102 *Ga.* 720, 733 (29 S. E. 615).

All of the foregoing decisions were rendered before passage of the act of 1906 (Code, § 56-904), supra, providing that statements in an application may not be considered either as a part of the policy or as an independent contract, unless the application is contained in or attached to the policy; but this fact alone does not affect the value of these decisions as precedents in the instant case, since the application here was so attached and made a part of the policy. It is true also, of course, that each of these decisions antedated the enactment of 1912, declaring what is necessary to constitute a material statement or representation, but they show clearly that it had been the sustained policy of this court since the Code of 1863 to deal with all such statements according to their effect upon the risk, regardless of what they may have been called, either by the contracting parties or by the court in rendering a decision. While the words *warranty* and *covenant* have each been used in decisions, and the Code itself in one section contains the word *covenanted,* such statements by applicants have been consistently construed as having no greater effect than representations, and as

being in like manner "utterly immaterial," unless they changed the extent or character of the risk, and "enhanced" it as against the insurer. Accordingly, we can only conclude that the provision in the act of 1912 (Code, § 56-908), that "No statements, covenants, or representations contained in applications for insurance shall ever be held or construed to be warranties, but shall be held to be representations only," was merely declaratory of the former law as repeatedly construed by this court; and the same is also true of the provision as to materiality, wherein it is declared in effect that in order for any statement or representation to be material, it must "change the character and nature of the risk as contemplated in the policy." This language is substantially the same as that contained in pre-existing sections relating to fire insurance but declared in another section to be equally the law of life insurance wherever applicable. Nor was the former law changed in any way with respect to fraud and good faith, since the later statute (Code, § 56-908) clearly refers to "actual fraud" in the alternative, providing that the policy shall be enforceable unless the applicant or beneficiary shall have been guilty of actual fraud *or* shall have made material misrepresentations, as described. Compare *Calhoun* v. *Little,* 106 *Ga.* 336 (3) (32 S. E. 86, 43 L. R. A. 630, 71 Am. St. R. 254) ; *Horn* v. *State,* 114 *Ga.* 509, 511 (40 S. E. 768) ; *Hirsch* v. *Shepherd Lumber Corporation,* 194 *Ga.* 113, 116 (20 S. E. 2d, 575).

Counsel for the plaintiff suggest that there may have been a repeal of pre-existing sections in so far as they were made applicable to life insurance; but we do not deem it necessary to inquire into this, since the statutes are substantially the same as related to the questions presented, and for that reason, even if the later acts should be considered as a comprehensive treatment of the same subject-matter, and thus as repealing the former law, the result still could not be different in the instant case. As to repeal by implication on such theory, see *City of Atlanta* v. *Goodman,* 183 *Ga.* 834 (189 S. E. 829) ; *Britton* v. *Bowden,* 188 *Ga.* 806 (5 S. E. 2d, 47).

It follows that no fault can be found with the decision of the Court of Appeals merely because one of the cases cited therein, *Northwestern Life Insurance Co.* v. *Montgomery,* 116 *Ga.* 799 (2) (supra), was decided several years before the act of 1912. It may

be remarked, however, that because of an incontestable clause there involved, the insurer in that case was relegated to the defense of actual fraud, whereas in the instant case proof of actual fraud was unnecessary, and the Court of Appeals did not hold that it was shown. Compare *Johnson* v. *National Life Insurance Co.,* 134 *Ga.* 800 (68 S. E. 731) ; *Interstate Life & Accident Co.* v. *Bess,* 35 *Ga. App.* 723 (134 S. E. 804) ; *Life & Casualty Insurance Co.* v. *Gaines,* 59 *Ga. App.* 545 (2) (2 S. E. 2d, 153), and in connection with the *Gaines* case, see Metropolitan Life Insurance Co. v. Becraft, 213 Ind. 378 (12 N. E. 2d, 952, 115 A. L. R. 93) ; New York Life Insurance Co. v. Kuhlenschmidt, 218 Ind. 404 (33 N. E. 2d, 340, 135 A. L. R. 397) ; 29 Am. Jur. 442, § 547.

In *Empire Life Insurance Co.* v. *Jones,* 14 *Ga. App.* 647 (2) (82 S. E. 62), it was held: "A material representation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of such acceptance." This ruling was based upon statements in decisions in other jurisdictions and by text-writers, and thus may be traceable to laws different from ours. Nevertheless it was cited with approval in *Lee* v. *Metropolitan Life Insurance Co.,* 158 *Ga.* 517 (123 S. E. 737), and has been followed in several later decisions by this court. The same rule has been stated in a number of decisions by the Court of Appeals since *Empire Life Insurance Co.* v. *Jones,* supra. While the plaintiff here does not question its soundness, we may observe, in this connection, that the rule must be construed and applied in harmony with the Georgia statutes as to increase in risk; otherwise it would be incorrect and entirely out of place in Georgia decisions. Our statutory definition, however, would seem to embody a perfectly fair and just rule as applied to insurers; and if one of them should adopt a different standard, he could no longer be termed *prudent.* Accordingly, the rule as enunciated by the courts accords by implication with that declared in the Code, and thus may be taken as a correct statement. Seemingly, though, it has added nothing to clarity, since the Code itself is plain, as well as controlling. Compare *Commercial Casualty Insurance Co.* v. *Jeffers,* 69 *Ga. App.* 52 (24 S. E. 2d, 815) ; and see O'Keefe *v.* Zurich General Accident & Liability Insurance Co., 43 Fed. 2d, 809 (73 A. L. R. 298) ; 29 Am. Jur. 424, 441, 443, §§ 525, 546, 548.

There is one case that is out of harmony with what we have just stated as to the meaning of the Georgia decisions declaring that a material representation is one that would influence a prudent insurer; and that case is *Lee* v. *Metropolitan Life Insurance Co.*, 158 *Ga.* 517 (supra), which, as we have indicated, is the very first case in which the rule was mentioned by this court. We refer to the ruling therein that in order to maintain a defense based on material misrepresentation it is not necessary "for the insurer to show that the misrepresentations enlarged the extent of the risk in the particular case." The decision is not a controlling precedent, not having been concurred in by all the Justices; and after further consideration, we are of the opinion that the quoted ruling is in conflict with the Code, and therefore unsound. That is to say, on deliberating the question again, we are constrained to hold that in order to maintain a defense based on such a representation, it *must be* shown that the risk was enhanced in the particular case. It was further held in the *Lee* case, and correctly as we think, that it need not be shown that the misrepresented fact or condition actually or "probably contributed toward producing the death of the insured or other event maturing the benefits of the policy in part or in whole earlier than would have been the case if the representation had been true." Enhancing the risk is one thing, while actually contributing to death or accelerating it is an entirely different thing. The Code says nothing about stating a fact or condition which either contributes to death or hastens its coming, but the test prescribed is increase in the risk. It is expectancy, and not ultimate fact, that controls; risk, not loss. For the purpose of illustration, let us suppose that an applicant had been treated for a serious disease such as tuberculosis, but falsely represented that he had not. Shortly after the policy was issued he was killed in an automobile accident, so that his death did not result in any manner from the disease with which he was afflicted. Could the insurer plead that the policy had been obtained through misrepresentation as to consultation or treatment, or would such defense be precluded upon the theory that the misrepresentation did not in any way contribute to or hasten the event of death? Or, to vary the illustration, let us say that an insured had been treated for cancer and was suffering from such disease at the time he applied for the policy, but in his application he denied that he had ever had

any such disease or consulted a physician. A few days after the policy was delivered, he contracted influenza, and then pneumonia, from which he died. It would seem that in each of these cases the misrepresentation increased the risk, rendered the policy voidable, although it in no way contributed to the insured's death. *Firemen's Insurance Co.* v. *Parmer,* 51 *Ga. App.* 916 (181 S. E. 880); *Mutual Benefit Health & Accident Association* v. *Marsh,* 60 *Ga. App.* 431 (2) (4 S. E. 2d, 84).

It appears that in some States the statutes are stronger against the insurer, providing in effect that no misrepresentation shall be considered material or defeat recovery unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become payable; but in this State, the law clearly does not so provide. *Vaughn* v. *National Life & Accident Insurance Co.,* 189 *Ga.* 121 (2) (5 S. E. 2d, 238); *Commercial Casualty Insurance Co.* v. *Jeffers,* 69 *Ga. App.* 52 (24 S. E. 2d, 815). See also Jefferson Standard Life Insurance Co. v. Clemmer, 79 Fed. 2d, 724 (103 A. L. R. 171); Metropolitan Life Insurance Co. v. Becraft, supra; 29 Am. Jur. 443, § 548; 37 C. J. 449, § 170.

Nor is it the law of this State that a misrepresentation as to consultation or treatment for a slight or trivial ailment will be sufficient to avoid the policy, but it must be affirmatively shown that the illness or condition was of such nature that it materially increased the risk. This does not mean, however, that the illness must within itself have been "serious." Both of these propositions were clearly and emphatically ruled in *Vaughn* v. *National Life & Accident Insurance Co.,* 189 *Ga.* 121 (supra), a decision cited and relied on in the brief for the plaintiff. Compare Ward *v.* Standard Accident Insurance Co., 30 Fed. 2d, 328 (63 A. L. R. 842); California-Western States Life Insurance Co. *v.* Feinsten, 15 Cal. 2d, 413 (101 Pac. 2d, 696, 131 A. L. R. 608); 29 Am. Jur. 463, 465, §§ 570, 572. It may be also noticed, in passing, that in the *Vaughn* case we treated the Code §§ 56-820 and 56-821 as still a part of the law relating to life insurance; for these sections were cited, along with section 56-908, for the proposition that the legislature "in the exercise of its constitutional power, has prescribed the rule that must be applied in such cases." If it is true that a misrepresentation as to consultation or treatment for a slight or trivial ailment is not to be considered as material, but at the same

time it need not be shown that the illness was serious, what then can be the criterion in reference to disease or illness, in such case? As a matter of fact, the Code does not mention any particular subject as to which misrepresentations may be material; and so we have only the same guide as to physical conditions that we have as to other matters. That is to say, whether the misrepresentation relates to health or to some other fact or condition, the final test is whether there was an increase in risk. While the statute is also silent as to degree, manifestly it contemplates a *substantial* increase, and not one that is merely infinitesimal or imaginary, as the law is generally not concerned with what is less than "substantial." Code, §§ 20-1101, 102-102(6); *Morgan* v. *Colt Co.,* 34 *Ga. App.* 630 (2), 631 (130 S. E. 600).

It follows that the gravity of the disease or ailment, in cases involving materiality of a *misrepresentation* as to consultation or treatment therefor, can not properly be determined by resorting to definitions of "good health" and "sound health" as these terms appear in stipulations in applications or policies; and decisions applying such definitions in cases of the former class do not, in our opinion, apply the true rule as to increase in risk. The *increase* must be at least *substantial,* but need not be more. This as we think is the true criterion in such cases. For decisions defining the quoted or similar terms, as found in policy or other contractual provisions, see *Massachusetts Benefit Life Association* v. *Robinson,* 104 *Ga.* 256 (3, 10), 284, 290 (30 S. E. 918, 42 L. R. A. 261); *National Life & Accident Insurance Co.* v. *Smith,* 34 *Ga. App.* 242 (129 S. E. 113); *National Life & Accident Insurance Co.* v. *Martin,* 35 *Ga. App.* 1 (132 S. E. 120). For decisions applying the "serious illness" rule to *misrepresentations,* see *Federal Life Insurance Co.* v. *Summergill,* 45 *Ga. App.* 829 (166 S. E. 54); *Mutual Benefit Health & Accident Association* v. *Bell,* 49 *Ga. App.* 640 (8), 654 (176 S. E. 124); *Equitable Life Assurance Society* v. *Minter,* 57 *Ga. App.* 65, 69 (194 S. E. 229); *Southern Life Insurance Co.* v. *White,* 60 *Ga. App.* 414, 420 (3 S. E. 2d, 849); *Commercial Casualty Insurance Co.* v. *Jeffers,* supra. As we have just indicated, we do not think the rule can properly be applied to misrepresentations; and the five decisions last mentioned, with others of similar import, if any, are to that extent disapproved. *Vaughn* v. *National Life & Accident Insurance Co.,* supra.

This court knows judicially and without proof that cancer is a dangerous disease, and thus may in like manner know that any condition that tends to become a cancer is more than a trivial ailment. In this case it appeared, without dispute, that the insured had suffered from a keratosis, for which he had been treated with radium, about three and a half years before the policy was issued. It was shown further that a keratosis is regarded generally in the medical profession as "precancerous," in that it may or may not develop into a cancer; also that even though it may on treatment disappear and be apparently cured, its final development into a cancer, or the development of a cancer elsewhere from the same cause, may be reasonably apprehended; and the insured here had never been dismissed as "entirely well." These facts appearing conclusively and without dispute from the evidence, it must be held as a matter of law that the condition thus misrepresented was one that substantially increased the *risk;* and this is true regardless of whether it bore any relation direct or collateral to the cancer from which the insured died. The verdict for the plaintiff was unauthorized, and the Court of Appeals properly so held. Nor is there substantial merit in any of the criticisms of the decision.

The decisions in *Sovereign Camp of Woodmen of the World* v. *Parker,* 36 *Ga. App.* 695 (138 S. E. 86), and *Jefferson Standard Life Insurance Co.* v. *Henderson,* 37 *Ga. App.* 704 (141 S. E. 498), may have been somewhat stronger for the insurer, but they were not distinguishable on principle from the instant case, and the Court of Appeals did not commit error in following them. While the decision in *National Life & Accident Insurance Co.* v. *Gordon,* 183 *Ga.* 577 (188 S. E. 894), also cited by that court, did inadvertently refer to "warranties," and stated unnecessarily that the answers given in the application "bore direct relation to the ultimate loss caused by the death of the insured," it did not induce any incorrect statement of the law in the decision under review.

Counsel for the defendant rely in part on the decision in *Phillips* v. *New York Life Insurance Co.,* 173 *Ga.* 135 (159 S. E. 696), and *New York Life Insurance Co.* v. *Hollis,* 177 *Ga.* 805 (171 S. E. 288), the latter of which was also cited by the Court of Appeals in its decision. On the other hand, it is urged by the plaintiff's counsel that these cases are distinguished from the instant case, because of the fact that each of them involved a reinstatement of a

policy that had lapsed, whereas the present case involves an original application. As to this question, it seems to the writer that the same rules of law would be applicable in both classes of cases, and that such was the effect of the unanimous decisions in the *Phillips* and *Hollis* cases. This question is immaterial in the instant case, however, and no ruling thereon is intended; nor is the statement of the writer more than tentative. On the general subject, see *Massachusetts Benefit Life Association* v. *Robinson,* supra; *Lockett* v. *National Life & Accident Insurance Co.,* 193 *Ga.* 372 (18 S. E. 2d, 550); *Life & Casualty Insurance Co.* v. *Davis,* 62 *Ga. App.* 832 (10 S. E. 2d, 129); New York Life Insurance Co. v. Buchberg, 249 Mich. 317 (228 N. W. 770, 67 A. L. R. 1483, 1489); MacDonald *v.* Metropolitan Life Insurance Co., 304 Pa. 213 (155 Atl. 491, 77 A. L. R. 353); Tatum *v.* Guardian Life Insurance Co., 75 Fed. 2d, 476 (98 A. L. R. 341); California-Western States Life Insurance Co. *v.* Feinsten, supra; 4 Couch on Insurance, §§ 819c, 820a, 878; 29 Am. Jur. 251, 253; §§ 266, 269.

The Court of Appeals stated in its opinion that counsel for the plaintiff had cited several decisions by that court which were apparently in conflict with its "present holding," and it seems from the briefs that the cases which the court had in mind were: *Brown* v. *Mutual Life Insurance Co.,* 29 *Ga. App.* 794 (5) (116 S. E. 559); *Life & Casualty Insurance Co.* v. *Burkett,* 38 *Ga. App.* 328 (144 S. E. 29); *Metropolitan Life Insurance Co.* v. *Busby,* 42 *Ga. App.* 808 (157 S. E. 354); *Metropolitan Life Insurance Co.* v. *Cooper,* 54 *Ga. App.* 192 (187 S. E. 167); *Life & Casualty Insurance Co.* v. *Gaines,* 59 *Ga. App.* 545 (2 S. E. 2d, 153); *Bankers Health & Life Insurance Co.* v. *Kimberly,* 60 *Ga. App.* 128 (3 S. E. 2d, 148); *National Accident & Health Insurance Co.* v. *Childs,* 62 *Ga. App.* 633 (9 S. E. 2d, 108). A detailed analysis of each of these cases would unduly prolong the present opinion; and we will merely observe generally, that in determining whether any case is in conflict with another or others of this general class, various matters should be considered. Was an application attached to and made a part of the policy? Was there a limitation upon the authority of the soliciting agent or of the examining physician; and if so, was it expressed in an attached application, or in the policy only? Was the insurer limited by stipulation to the defense of *actual fraud?* Was there any question as to waiver or estoppel?

These and numerous other questions might require examination on the question of conflict.

Something was said on the argument as to the desirability of a more certain and definite rule as to what will constitute a material misrepresentation in a case of this kind. The rule is contained in the Code, and, as we have seen, may be stated in four simple words, *substantial increase in risk;* but its application will of course depend upon the facts of each particular case, which will necessarily vary, and can not be anticipated further than has been done in such statute.

An issue as to material representation, like questions as to negligence, proximate cause, and similar matters, should ordinarily be submitted to the jury; yet, just as is also true in reference to the other issues mentioned, where the evidence as a whole excludes every reasonable inference but one, the court may so rule as a matter of law. *Judgment affirmed. All the Justices concur.*