## NEW YORK LIFE INS. CO. v. FERLITA et al.

### Civil Action No. 2462.

District Court, N. D. Georgia, Atlanta Division.

July 8, 1944.

Bryan, Carter & Ansley, of Atlanta, Ga., for plaintiff.

Smith, Smith & Bloodworth and Croom Partridge, all of Atlanta, Ga., for defendants.

576

LOVETT, District Judge.

This case comes before me on the plaintiff's motion for a summary judgment. It is an action for the cancellation and rescission of a policy of life insurance issued June 3, 1940 by plaintiff to defendant on the ground of material misrepresentations of fact in the application resulting in a substantial change of the character and nature of the risk as contemplated by the policy.

■■ It is only necessary to determine whether the nonissuable facts construed in the light most unfavorable to the movant are such as will admit of but one conclusion, that the application contained misrepresentations which caused a substantial increase in the risk assumed by the insurer. Any such misrepresentation, whether made fraudulently or innocently, will void the policy under the Georgia law. Code of Ga., 1933, Secs. 56-820, 56-821, 56-911, and Preston v. National Life & Accident Ins. Co., 196 Ga. 217, 26 S.E.2d 439, 148 A.L.R. 897. Any analysis of this statement of the law would be merely repetitious of the very thorough discussion by Mr. Justice Bell in the above cited case.

As a part of defendant's application for insurance, attached to the policy, he represented to plaintiff's medical examiner that he had never been under observation in any hospital, asylum or sanitarium, that he had never consulted a physician or practitioner for or suffered from any ailment or disease of the brain, nervous system, heart, blood vessels, lungs or any other ailment and that he had not consulted, been examined or treated by any physicians or practitioners for five years before the application. He also made the further representation that:

"On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the company believing them to be true, shall rely and act upon them".

■ The uncontroverted facts, as shown by defendant's testimony and by his answers to plaintiff's request for admissions, are that defendant was inducted into the United States army as a SATC private between July and November, 1918, and was discharged December 12, 1918; that he was confined in a dormitory in Gainesville, Florida, in November, 1918, when he was in the United States army and that he remained there for about two weeks with influenza; that on July 15, 1921, defendant consulted and was examined by Dr. Snider of Tampa, Florida, and also by another doctor whose name he did not learn and that the result of this examination was that the physicians found he was in need of hospitalization and that he agreed to take such treatment; that defendant reported to the United States Public Health Hospital No. 74 at Gulfport, Mississippi, on September 10, 1921, and remained there about two months though he requested a discharge after two weeks; that defendant suffered from insomnia and headaches and from what he thought at the time was his heart and from nervous disorders before and after and during the time when he was at Hospital No. 74; that defendant consulted and was examined by Dr. W. J. Lancaster at Tampa, Florida, on or about July 19, 1921, and that he complained to Dr. Lancaster that he was suffering from nervousness and from what he believed at the time to be his heart; that defendant made application to the Federal Board (6) for Vocational Education, Division of Rehabilitation, on April 3, 1922, and in his application he stated that his disabilities were heart trouble, kidney and lung and hyperthyroid trouble, headaches, insomnia and a general nervous condition, that these troubles were incurred in service between November 1 and 18, 1918, that they developed from influenza which left him in a weakened condition and from excessive drilling and exercise (he now says he believed these statements were true at that time) ; that on the strength of this application and the medical examinations following it defendant did receive allowances for vocational education from the United States at the rate of $100 per month covering a period of approximately three years, a total allowance of $3,600; that defendant consulted and was examined by Dr. Lawrence B. Farrior at Tampa, Florida, on or about June 11, 1922, and he told Dr. Farrior that he had a pain over his heart at night and that he suffered from shortness of breath on exertion and that he was suffering from nervousness and insomnia; that, in connection with his service, defendant consulted and was examined and treated for nervousness, headaches and various other complaints on or about April

12, 1926, at Atlanta, Georgia, by doctors W. H. Owens, D. R. Longino and W. H. Malone, and defendant stated to his examiners that while he was in the army he was sent to the hospital with influenza which developed into pneumonia and that he was not only treated for influenza and pneumonia but also suffered from nervousness and was treated for it (he now says what he thought was pneumonia was actually influenza); that on December 16, 1936, May 29, 1939, and December 18, 1939, defendant received benefits ranging in amount from $23 to $70 in payment of claims made by him against the Mutual Benefit Health and Accident Association for disabilities from influenza; that defendant had consulted a physician or practitioner for and has suffered from ailments and diseases of the brain or nervous system, the heart, blood vessels, lungs, stomach, intestines and kidneys (he now states he believed at the time that he had these ailments but actually there was never any heart trouble).

The records of the United States Veterans' Bureau and Administration show that in 1921 defendant's disorder was diagnosed by Dr. William H. Houck as myocarditis, that he was sent to the Veterans' Hospital at Gulfport for treatment, that in 1922 he was examined by Drs. Farrior, Crenshaw, Register and Lancaster in Atlanta, who reported a finding of hyperthyroidism, and that in 1925 he was examined by Drs. Longino, Daniel and Malone in Atlanta and was given a diagnosis of myocarditis, hemorrhoids, hysteria and bronchitis.

Since the date of the policy defendant has been the victim of two heart attacks for which he has received treatment and hospitalization. According to report of Dr. B. S. Compton, heart specialist of the Veterans' Administration who examined defendant after his second attack, defendant must receive treatment for the balance of his life, and he will never be able to return to his former vocation, that of a dentist.

The policy was incontestable after two years from the date of issue, with certain exceptions. This action was brought within that time.

In my opinion, the uncontradicted evidence as a whole, including defendant's testimony and admissions, and the testimony of the assistant Medical Director of plaintiff, demands a finding that there were misrepresentations made by the defendant in the application for the insurance, that they were material and were relied upon by the insurer and that they so far varied from the truth as to result necessarily in a substantial increase in risk by the insurer. I conclude the policy is void. See Preston case, supra, and cases cited therein; Metropolitan Life Ins. Co. v. Madden, 5 Cir., 117 F.2d 446(4), 451; Penn Mut. Life Ins. Co. v. Mechanics' Sav. Bank & Trust Co., 6 Cir., 72 F. 413(7), 423, 430, 38 L.R.A. 33.

The motion for summary judgment is granted. Let an order be presented on notice. If either party considers more formal findings necessary or desirable, let it be made known.