28858. METROPOLITAN LIFE INSURANCE COMPANY v. MARSHALL.

DECIDED JULY 31, 1941.

*Garrett & McDonald,* for plaintiff in error.
*Parker & Parker,* contra.

STEPHENS, P. J. Mrs. Mary E. Marshall brought suit on February 27, 1940, against the Metropolitan Life Insurance Company on a policy of insurance in which her husband was the insured and plaintiff the beneficiary. It appeared from the petition that the policy had been written August 1, 1938; that it provided that the company would pay to the plaintiff $1010 "upon receipt of due proof of the death of the insured and upon the surrender of this policy;" that on October 7, 1939, the insured died; that at the time of his death all premiums on the policy had been paid and it was in effect; that on October 10, 1939, the defendant was furnished with due proof of death and the policy was surrendered to it; that on October 24, 1939, the defendant acknowledged receipt of due proof of death and of the plaintiff's claim under the policy; that on January 10, 1940, the defendant refused to pay the claim, and that such refusal to pay was in bad faith, and the defendant is indebted to the plaintiff, in addition to the principal amount of the policy, in the further sum of 25 per cent. thereof as damages together with $350 as reasonable attorney's fees for the prosecution of this suit.

The defendant denied liability and alleged that the policy had been issued on the insured's two-part application, dated July 22, 1938, for a policy in the amount of $1064, and that a true copy of the application was attached to the policy as an "integral and

component part" of it; that the application was sent to defendant's home office in New York City, and that in reliance on the truth and correctness of all the statements made in the application the defendant issued the policy; that the contract between it and the insured consisted of the application and the policy; that by an amendment to the application by the insured, made August 1, 1938, the application was changed so as to apply for $1010 of insurance instead of $1064; that payment of the policy was refused by the defendant on the ground of incorrect and untrue answers made by the insured to questions propounded in the application as to prior illnesses, time lost from work on account thereof, and as to what physicians the insured had been treated by within the past five years; that in the application following the answers of the insured to such questions and over his signature there was this recital: "I hereby certify that: (1) I have read the answers to the questions in part A and part B hereof, before signing; (2) they have been correctly written, as given by me; (3) they are full, true, and complete; and (4) there are no exceptions to any such answers other than stated herein;" that in the amendment of August 1, 1938, to the application it was recited as follows: "The undersigned hereby amends the application for life insurance made to your company, on date stated above, in the following particulars: these amendments and declarations are to be taken and considered as part of the said application and subject to the agreements, covenants, and statements therein contained, and the said application, together with these amendments is to be taken as a whole and considered as the basis of and as a part of the contract of insurance; by reducing the amount of insurance to $1010. In all other respects, said application is correct and true, and I hereby ratify and affirm the statements therein made as of the date hereof;" and that by reason of the above facts the false statements and material misrepresentations made by the insured in his application were repeated and affirmed by him.

The defendant further alleged that the questions asked of the insured were material in ascertaining the nature and extent of the risk to be assumed by it, and good faith required full, true, and correct disclosures and answers thereto; that the insured at the time of making the application knew of the untruth and falsity of his answer to such questions; that the defendant relied on the cor-

rectness and good faith of such answers, and issued the policy in reliance thereon; that had the defendant known, from true and full answers in good faith to these questions, the true nature and extent of the risk it was being asked by the insured to assume it would not have issued the policy at all; that the insured lived only a short space of eleven months or so after the policy was issued to him; that it was not until the death of the insured and just after the plaintiff filed her claim for payment under the policy that the defendant learned of the untruth and falsity of the answers made by the insured to the questions asked of him in the application, and that by reason of the misrepresentations and false and untrue statements made by the insured with knowledge "it would be unconscionable and unjust to defendant's other policy-holder members to make any payment thereon, and plaintiff should not recover in any amount." It was further alleged that the total amount paid the defendant as premiums was $70, repayment of which has been tendered to and refused by the plaintiff, and that the defendant makes this its continuing tender of payment of this amount. to the plaintiff "and further shows that it has acted in the utmost good faith."

The defendant amended its answer, and after striking the original allegations as to the false answers of the insured to the questions propounded in the application, alleged that the insured made incorrect and untrue answers to the questions in the application substantially as follows: To the question "What is your present condition of health?" the insured answered only "Good." This answer was incorrect and untrue in that the insured knew and failed to disclose that for a year or more he had been suffering from recurring and periodic mild pains in his chest which especially came on after exertion. To the question "Have you ever changed your residence or your occupation or left your work for more than one month on account of your health?" the insured answered "No." This answer was not correct in that the insured was absent from his usual work for a period of fifty-nine consecutive days on account of illness with gastric hyperacidity. To the question "How much time have you lost from . . work through illness during the last five years?" the insured only answered "Twenty-seven days, October, 1937. Tonsillectomy." This was an untrue answer in that the insured was absent from his work on account of influ-

enza from February 13, 1935, until February 20, 1935; from January 2, 1936, until March 1, 1936, on account of gastric hyperacidity; from November 7, 1936, until November 19, 1936, on account of influenza; and from October 6, 1937, until November 5, 1937, on account of chronic tonsillitis, during which time the tonsillectomy above referred to was performed. To the question "Have you any physical or mental defect or infirmity?" the insured answered "No." This answer was untrue in that the insured knew that he was suffering from and complaining of, and for some time had been suffering from and complaining of, recurring and periodic mild pains in his chest, which especially came on after exertion, which condition had continued for a period of two years before the time of his answering the questions. Such answer was also untrue because the insured knew that he was suffering and complaining of an acid condition of the stomach, dull aching pains in the region of his gall bladder, and neuritis in his right shoulder, all over a period of several years before the time of answering such question. To the question "Have you ever had any of the following complaints or diseases? . . Rheumatism, . ." the insured answered "Appendectomy; 1931. No comp." This answer was false in that the insured knew that he was suffering and complaining of rheumatism in his arm and left shoulder on May 12, 1937, when he received treatment and medicine for such complaint from a physician consulted by him for treatment. (The question above referred to, as appears from the application, contained, among the diseases and complaints listed, "appendicitis.") To the question "What clinics . . physicians . . if any, have you consulted or been treated by, within the past five years?" the insured answered only "W. D. Mixon, tonsillectomy, 1937." This answer was untrue in that of his knowledge the insured was confined to his home and ill with influenza from February 13, 1935, to February 20, 1935, and that Dr. C. M. Stephens was his attending physician; in that the insured was ill, absent from work, and confined to his home with gastric hyperacidity and suspected stomach ulcer from January 2, 1936, to March 1, 1936, when he called Dr. Stephens to prescribe for him; in that from November 7, 1936, to November 19, 1936, the insured was ill from influenza, absent from his work, and confined to his home, and called Dr. A. W. DeLoach to attend him; and in that the insured consulted with and was

given a physical examination by Dr. H. G. Huey on May 12, 1937, which examination revealed, among other things, that a smear of the secretion of his prostate gland showed that it had pus in it, that his tonsils were bad and should be removed, that he was suffering from a disease of the gall bladder known as cholecystitis and from hyperacid stomach, and was complaining of rheumatism in his arm and left shoulder. The amended answer alleged that the above constituted false statements and material misrepresentations on the part of the insured.

The case proceeded to trial. The plaintiff introduced evidence tending to support the allegations of the petition. A copy of the policy, which was attached to the petition, was introduced in evidence by the plaintiff. The policy provided that the defendant thereby insured the life of the plaintiff's husband "in accordance with the terms of this policy," and promised to pay the plaintiff $1010 "upon receipt of due proof of the death of the insured and upon the surrender of this policy." The policy provided that "this policy is issued in consideration of the application therefor, copy of which application is attached hereto and made part hereof;" that "this policy and the application therefor, copy of which is attached hereto as a part hereof, constitute the entire contract between the parties, and all statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this policy or be used in defense of a claim hereunder unless it be contained in the application therefor."

It appeared from the evidence that the insured was employed as an assistant foreman in the freight-car department of the Atlantic Coast Line Railroad at Waycross; that he was attendant on his usual work on July 15, 1939; that he complained of being ill on July 16, 1939; that he consulted a physician on that account on July 17, 1939; and that he died at his home in Waycross on October 7, 1939; and that the cause of his death was stated in the proof of death as a "heart attack." The plaintiff introduced evidence showing the furnishing of due proof of death, the payment of premiums, the presentation of a claim under the policy, and the written refusal of the company to pay the claim on the ground that the insured had made incorrect answers in the applications "in that there was no disclosure of the consultation with and examination

by Dr. Huey on May 12, 1937, at which time a serious condition was diagnosed," and "if the facts were admitted, the policy would not have been issued." The plaintiff introduced the evidence of several attorneys that $350, the amount alleged in the petition, was a fair and reasonable attorney's fee for handling the case in her behalf.

The defendant introduced evidence tending to show the absence of the insured from his usual employment on account of illness; also the evidence of physicians to the effect that they had treated the insured at his home when he would be confined to his bed and absent from work. Dr. A. W. DeLoach testified that he had treated the insured for an attack of influenza; that the insured made a complete recovery therefrom; that such illness would not have adversely affected his insurability in July, 1938; that so far as he knew the insured had completely recovered therefrom when he returned to work, and that he had seen the insured from time to time on the street thereafter apparently in good health. This doctor was evidently testifying as to happenings previous to the date of the application.

Dr. Leo Smith testified that he specialized in eye, ear, nose, and throat work, and was associated with Dr. W. D. Mixon, and that he operated on the insured in "October, 1939 [1937?]," for the removal of his tonsils; and that while the insured was completely disabled for a period of several days thereafter he saw the insured several times after the operation and from observation he had made a complete recovery, and he could not see that anything was wrong with him. He testified that chronic diseased tonsils sometimes cause rheumatism, kidney or gall bladder trouble, arthritis, and have been known to affect the heart.

Dr. H. G. Huey testified that he examined the insured in his office at Homerville on May 12, 1937, at which time the insured complained of a sour stomach, dull aching pain over his gall bladder, heart worse after exercise, and that he had neuritis of the right shoulder and occasional headaches and was nervous; that the insured informed him of an appendectomy some six years previously, and of neuritis in his right shoulder some two years before this time; that he had suggested that the insured have his tonsils removed, and that his examination at that time revealed a perfectly normal heart; that from his examination he determined that.

the rheumatic condition of the insured was from his tonsils; that while he would not have passed him for insurance at that time, if the tonsils were removed and his neuritis and rheumatism cleared that he would, in his opinion, have been a fit subject for life insurance, and that there was not anything in his condition that he regarded as incurable; that at the time he examined the insured in his office at Homerville, which was on May 12, 1937, he found that the insured had a "perfectly normal heart;" that he also found that the "prostate smear showed some slight amount of pus, more than usual;" that in his diagnosis the words "pus in prostate" mean that the insured just had more pus than was normal, and that about half of the time pus is found in the prostate of a man of the insured's age, and that there was nothing especially serious or alarming about that; that the insured complained of rheumatism; that he advised him to have his tonsils removed and this would probably remedy the rheumatic pains, and that there was nothing in his examination of the insured that indicated that the insured would ever die of coronary thrombosis; that from his record it appeared that when the insured was examined he complained of his heart being worse after exercise, and that this had been present for three years; that as soon as the insured had his tonsils removed, his prostate massaged and was back to normal in his opinion there were no serious physical defects which would prevent him from securing a standard A policy of life insurance.

Dr. Z. S. Sikes testified that he treated the insured in the hospital at Waycross, and first saw him on July 18, 1939; that he talked to him and made a note of what he told him as to his "sick history" and as to his complaint at that time; that this history given him by the insured mentioned that the past health of the insured had been good; that he had had the usual diseases of childhood with no complications; that he had had an appendectomy about eight years ago, tonsillectomy about eighteen months ago; and that as to the "chief complaint" of the insured at the time the witness made the following record: "C. C. pain over precordium. Onset and course: Sunday afternoon, July 16th, patient experienced occasional mild pains in chest. After supper, he was suddenly seized with violent pain over precordium, accompanied by smothering sensation in throat. Pain continued with slight remissions and several exacerbations during the night. Along with same he

also had extreme prostration, vomited several times with pain. During past three years patient has had periodic mild pains in chest. Come on especially after exertion." The witness testified that he diagnosed the insured's condition as "coronary trouble, heart trouble;" that the insured died shortly afterward in the hospital; that heart trouble "is something that most frequently slips up on some one so that they don't know anything about it;" that a man may be apparently perfectly well to-day and "to-morrow go out like a snap with coronary thrombosis;" that the average man with mild pains in his chest might have a slight indigestion rather than coronary disorder, and that sometimes such pain "makes a fellow think he has heart trouble when he has nothing but a case of indigestion." The witness further testified: "Those mild pains in the chest were not necessarily indicative of heart trouble."

The defendant introduced evidence tending to show that it appeared from the records of the insured's employer that he was out from work from February 13, 1935, to February 20, 1935, on account of influenza, and Dr. C. M. Stephens of Waycross was his attending physician; that he was again out from January 2, 1936, to March 1, 1936, on account of gastric hyperacidity, and Dr. Stephens was his attending physician; that he was next out on account of influenza from November 7, 1936, to November 19, 1936, and his attending physician was Dr. A. W. DeLoach of Waycross; that the next time the insured was out from work began "October 6, 1937," and continued until "November 3, 1937," when he was off on account of chronic tonsillitis, and a tonsillectomy was performed by Dr. Leo Smith of Waycross; that again he was out from work from July 17, 1939, until October 7, 1939, when he died; "that this was on account of coronary thrombosis," and that during this time he was treated in the "department hospital at Waycross from July 18, 1939, to August 5, 1939."

F. L. Baldwin, a junior underwriter for seventeen years and employed by the defendant for six years, whose duties consisted in reviewing new applications for ordinary insurance, testified that he passed on the application of the insured and approved it; that had he known the insured had had, during the two or three years before the date of the application, "periodic mild pains in the chest, especially after exertion," he would have referred the application to the medical division for further consideration, and that had he

known that the insured had been examined by a physician some fifteen months previously to the date of the application, and had that examination revealed bad tonsils, a "prostatic smear" showing "some pus," and "cholecystitis and hyperacid stomach," that he would have referred the application to the medical division. Dr. Edmund Wilson, who was employed by the defendant as an assistant medical director, testified that he saw and considered the application of the insured; that it was his duty to pass on and determine the acceptability of applications for life insurance from a medical standpoint; that had any well-managed life-insurance company been informed through an application submitted to it or otherwise that the applicant had had, during the past two or three years before the date of application, "periodic mild pains in the chest, especially after exertion," that he would have declined the application; that had any well-managed life-insurance company been informed through an application that the applicant, within fifteen months previously to the date of the application, had been examined by a physician and the examination revealed the conditions testified to by Mr. Baldwin, in his opinion the company would have declined the application.

The jury returned a verdict for the plaintiff for the amount of the policy, $1010 with interest, 10 per cent. damages, and $350 attorney's fee. The defendant moved for a new trial on the general grounds, and by amendment added several special grounds.

1. In the first amended ground error is assigned on the refusal of the court to permit a witness for the defendant, who was employed by it in the capacity of a junior underwriter and was its representative to whom the application in this case had been referred for consideration, to testify that the information sought by certain questions in the application was essential to a determination of the applicant's acceptability for insurance; that if at the time he passed on this application he had had information that the applicant, three years before the date of the application, had had "periodic mild pains in the chest, especially after exertion," had had information that the applicant the year before the application had been examined by a physician which examination had revealed "prostatic smear shows some pus . . tonsils bad and should be removed . . cholecystitis . . hyperacid stomach," he would have passed the application to the defendant's medical division for

further consideration; that he was deceived by the answers of the applicant in such application into approving the application and authorizing the issuance of the policy; and that he was certain that with the information as to such pains in the chest and such examination and the result thereof the underwriter of any well-managed life-insurance company "would have done as I would have done and would have referred it to his medical division for further consideration." The defendant contends that the excluded testimony would have shown that the application in this case "instead of receiving a routine handling as it did because of the fact that no unusual circumstances were disclosed in the application, would have been given a handling quite different from the routine handling, and would have been referred to the medical division of his company for further consideration and action thereon;" and that "as a qualified expert in life-insurance matters and the practices of other well-managed life-insurance companies, his testimony also would have established the fact that the underwriter of any other well-managed company would have done the same thing with a true application like the Marshall one, and would have referred it to the medical division of his own company for further action."

"Evidence is inadmissible to show that the facts suppressed or falsely represented in the application would have been deemed material in passing on the application and that the company would not have issued the policy had it known the truth in regard thereto." 33 C. J. 116. In *Brown* v. *Mutual Life Insurance Co.*, 29 *Ga. App.* 794 (116 S. E. 559), this court held that while a medical officer from the home office of the insurance company could properly testify to facts tending to establish the materiality of representations alleged to have been made in an application for insurance as affecting the risk, it was error to permit him to testify that had the company known of the falsity of the representations contained in the application it would not have accepted the risk. See *Life & Casualty Insurance Co.* v. *Burkett*, 38 *Ga. App.* 328, 336 (144 S. E. 29). In *Mutual Benefit Health &c. Asso.* v. *Bell*, 49 *Ga. App.* 640, 641, 652 (176 S. E. 124), it was held as follows: "Evidence is not admissible to show that the facts alleged to have been suppressed or falsely represented in the application would have been deemed material in passing on the application, and that the company would not have issued the policy had it known the

truth in regard thereto. The company's agents or officers can not be permitted to testify that the application would have been rejected if certain facts had been truthfully stated therein." The testimony, the exclusion of which is complained of in this ground, was not admissible, and the court did not err in excluding it. Likewise, the court did not err, as complained of in ground 5, in excluding certain testimony of Dr. Edmund Wilson, who was an assistant medical director of the defendant, charged with the duty of passing on and determining the acceptability of applicants for life insurance from the medical standpoint, that if the underwriter of the defendant had had information as to the chest pains of the insured, and as to the examination of the insured by a physician the year before the application, and as to the result of this examination, the underwriter would have referred the application to the medical division of the defendant for consideration and action, and that with such information or knowledge the medical division would have declined the application and declined to authorize the issuance of any policy of life insurance to the applicant. This testimony was a conclusion.

Complaint is likewise made in this ground of the exclusion of the following question to Dr. Wilson and the answer thereto: Q. "Assuming that any well-managed life-insurance company was informed through an application submitted to it or otherwise that the applicant, during the past two or three years prior to the date of the application, had had periodic mild pains in the chest, especially after exertion, state what action, in your opinion, the underwriter or medical director of that company would take on the application?" A. "I am certain that with such information the application would have been declined." For the reasons above stated the court did not err in excluding this testimony.

Complaint is further made in ground 6 that the court erred in excluding the testimony of this witness that information as to the "periodic mild pains in the chest, especially after exertion" of the applicant, and information that the applicant, in May of the year before, had been examined by a physician, and that this examination had revealed bad tonsils, acid stomach, etc., was information "very material" to a fair and proper determination of the applicant's acceptability for life insurance. Testimony that certain information not disclosed by the applicant was "very material" to a

fair and proper determination of the applicant's acceptability for life insurance was a conclusion and not admissible.

2. It is contended in grounds 7, 8, and 9 that the court erred in instructing the jury as follows: (1) "Any verbal or written representations of facts by the assured to induce the acceptance of the risk, if material, must be true, or the policy is void. . . If, however, the party has no knowledge but states on the representations of others bona fide, and so informs the insurer, the falsity of the information does not void the policy." (2) "A failure to state a material fact, if not done fraudulently, does not void; but the wilful concealment of such a fact, which would enhance the risk, will void the policy." And (3) "Wilful misrepresentations by the assured . . as to . . any . . material inquiry made, will void the policy." It is insisted that these instructions were not sound as abstract principles of law, were not adjusted to the issues made in the case, and were confusing and misleading to the jury. These charges embraced substantially the provisions of Code, §§ 56-821, 56-822, 56-824, and were sound as abstract principles of law. The contention that the provisions of these sections were not applicable under the pleadings and the evidence in this case is without merit. It is true that the application for insurance was attached to and made a part of the contract. However, different sections of the Code govern the effect of a false representation of a material fact in an application for insurance and the effect of an applicant's failure to state material facts or the concealment of such facts. Code, §§ 56-820, 56-821, apply where there is a false representation made in the application as to a matter material to the risk, and in such a case the question of good faith or lack thereof on the part of the applicant is not necessarily involved. Code, §§ 56-822, 56-824, apply where there is a failure to state a material fact in an application which is attached to and forms a part of the policy, or a concealment of such a fact as would enhance the risk. In a case arising under the provisions of the Code last referred to it is necessary that there be a fraudulent failure to state a material fact or a wilful concealment thereof by the applicant. Code, § 56-824, provides: "Wilful misrepresentation by the insured . . as to any . . material inquiry made, shall void the policy." Under the decision of this court in *Mutual Benefit &c. Co.* v. *Bell,* supra, as applied to the defenses raised by the

insurer under the pleadings and evidence in this case, the court did not err in giving in charge the principles embraced in Code, §§ 56-822, 56-824.

The court did not err in charging the provisions of Code, § 56-821, complained of in ground 7 on the ground that there was no question in this case as to the applicant's making any statements in his application on the representations of others. While this portion of the Code section was not applicable, in giving this section in charge to the jury the court did not harm the defendant by including it in his charge.

3. Complaint is made in ground 10 that the court erred in charging the jury as follows: "All persons applying for life insurance in a life-insurance company writing life insurance in this State shall submit to such reasonable rules and regulations as may be prescribed by such insurance company, and if the policy shall be issued on the life of such person the beneficiary of such policy shall be entitled to collect the amount of such policy under the terms of the contract when and as made, unless the applicant or beneficiary shall have been guilty of actual fraud or shall have made material misrepresentations in procuring such policy, which misrepresentations change the character and nature of the risk, as contemplated in the policy so issued by the company. All statements, covenants, and representations contained in applications for insurance shall never be held or construed to be warranties, but shall be held to be representations only." This charge was not unsound as an abstract principle of law, as contended by the defendant, but was substantially a statement of the provisions of Code, § 56-908. The provisions of this section are applicable in a suit on a policy of life insurance where the insurer pleads fraud in the procurement of the policy, and alleges in defense of such suit that the applicant for insurance made, in the application which was attached to and formed a part of the policy, untrue and incorrect statements relatively to previous illnesses and relatively to whether or not he had been previously treated by a physician. Under the facts of this case the court did not err in giving this section in charge.

4. The court charged the jury as follows: "In regard to misrepresentations, the questions for you to determine are: first, did the insured make misrepresentations in the application for the pro-

curement of the policy of life insurance in controversy, as alleged in defendant's plea and answer; second, if so, were they material, and did they change the nature or extent or character of the risk?" Complaint is made in ground 11 that this charge was error, unsound as an abstract principle of law, not adjusted to the issues made by the pleadings and the evidence, and was confusing and misleading. This charge was not unsound as an abstract principle of law. *Sovereign Camp W. O. W.* v. *Beard,* 26 *Ga. App.* 130 (105 S. E. 629). The defendant does not show in this ground why the charge was not adjusted to the issues or did not cover any of the issues or was confusing and misleading. *Wade* v. *Eason,* 31 *Ga. App.* 256 (120 S. E. 440); *Riddle* v. *Sheppard,* 119 *Ga.* 930 (3) (47 S. E. 201). Furthermore, this charge was not prejudicial to the defendant.

5. Complaint is made in ground 12 that the court erred in instructing the jury as follows: "Now, in regard to concealment, the questions to be determined in this connection are these: was there a concealment of facts by the insured in his application for the policy in controversy? Was the concealment wilful? Did it relate to a matter material to the risk? If you should find . . that there was a concealment of fact in the application for the policy of insurance in controversy, and you should further find that such concealment was wilful, and you should further find that such concealment, if any, was as to a matter material to the risk, you should find in favor of the defendant. On the other hand, if you should find that there was no concealment of fact in the application for insurance, or if you should find such concealment, if any, was not a wilful concealment, or if you should find such concealment, if any, was not material to the risk, you should find in favor of the plaintiff. I charge you that a failure to state a material fact, if not done fraudulently, does not void the policy, but the wilful concealment of such fact would void the policy. A material fact in such an application is one that would influence a prudent insurer to determine whether or not to accept the risk and in fixing the amount of premiums, in the event of acceptance at the time of the issuance of the policy." This charge did not embrace incorrect and unsound abstract principles of law. *Mutual Benefit Health &c. Asso.* v. *Bell,* 49 *Ga. App.* 640, 648 (176 S. E. 124), and cit.; *Lee* v. *Metropolitan Life Insurance Co.,* 158 *Ga.* 517 (2)

(123 S. E. 737) ; *Phillips* v. *New York Life Insurance Co.*, 173 *Ga.* 135 (159 S. E. 696)'; *Vaughn* v. *National Life & Accident Insurance Co.*, 189 *Ga.* 121, 124 (5 S. E. 2d, 238). This charge was not error on the ground that it was repugnant and antagonistic to a charge previously given by the court on the questions of misrepresentations and false answers in the application, or on the ground that there was no differentiation therein of the issues, or any instructions under which the jury could determine whether the alleged false answers in the application were misrepresentations or amounted to concealment of material facts. This charge was not error on the ground that the defendant's entire defense was predicated on misrepresentations and false answers, and on the ground that there was no issue made by the pleadings or the evidence of the defendant as to the failure to state a material fact or the wilful concealment by the application of a material fact. See *National Life & Accident Insurance Co.* v. *Williams*, 53 *Ga. App.* 677 (4), 681 (187 S. E. 145).

6. In an action to recover on a policy of life insurance where the insured is charged with having made false answers to questions propounded to him in the application relatively to previous illnesses and treatment by physicians, where there is testimony tending to show the good character of the insured, it is not error for the court to charge the jury as follows: "In regard to the good character of the insured, I charge you that where an effort is made to impeach a contract of insurance upon the ground that it was issued in consequence of the perpetration of a fraud by the assured upon the insurer, evidence of the good character of the assured is admissible to support his bona fides in the transactions." *German American Mutual Life Asso.* v. *Farley*, 102 *Ga.* 720 (5)· (29 S. E. 615) ; *Metropolitan Life Insurance Co.* v. *Hand*, 25 *Ga. App.* 90, 91 (102 S. E. 647).

7. The court did not err in charging the jury that "the term 'sound health' or 'good health' used in the policy means that the applicant has no grave impairment or serious disease and is free from any ailment that seriously affects the general soundness and healthfulness of the system," and that "sound health consists not alone in the outward appearance of sound health, but also in a reasonable freedom from physical derangement and 'impairment." This charge was not erroneous as an unsound abstract principle of

law.  *Mutual Benefit Health &c. Asso.* v. *Bell,* supra, and cit. This charge did not amount to an expression of opinion by the court as to what had and what had not been proved by the parties. It does not appear that the charge was not adjusted to the issues and the evidence and was confusing and misleading to the jury. *Riddle* v. *Sheppard,* 119 *Ga.* 930 (3) (47 S. E. 201); *Wade* v. *Eason,* 31 *Ga. App.* 256 (120 S. E. 440).

8. Under the evidence in this case the court did not err in charging the jury as follows: "If, after considering all the evidence, facts, and circumstances proven in the case, you should reach the conclusion that the plaintiff is entitled to recover, then and in that event you would be authorized to find in favor of the plaintiff for such an amount as you think the proven facts and circumstances in the case justify, not to exceed the amount named in the plaintiff's petition, and, in addition to the principal, that is, to the face value of the policy and interest sued on in this case, under the instructions of the court, if you find that the plaintiff is entitled to recover damages and attorney fees, you would find, in addition to the amount of the policy, if you should find in favor of the plaintiff, such amount as damages and attorney fees as you think the proven facts and circumstances in the case justify. On the other hand, if you should reach the conclusion that the plaintiff is not entitled to recover, then and in that event you will find in favor of the defendant. If you find in favor of the defendant the form of your verdict would be, 'We, the jury, find in favor of the defendant.'" The defendant assigns error on this charge on the following grounds: (a) that the charge was erroneous and not sound as an abstract principle of law; (b) that the charge was not adjusted to the issues and was confusing and misleading to the jury; (c) that the charge amounted to an expression of opinion by the court that if the jury should find for the plaintiff the verdict should include an amount for damages and attorney's fees; and (d) because such charge was confusing and misleading to the jury. This charge was not error for any of the reasons assigned.

9. "Statements made in an application for life insurance will not, if false, void the policy issued thereon unless they were material and operated to change the nature or character of the risk. This materiality, when not indisputably established by the evidence, is a matter for determination by a jury." *Brown* v. *Mu-*

*tual Life Insurance Co.*, 29 *Ga. App.* 794 (116 S. E. 559). The insurer contends that the insured made false answers to questions in the application as to matters which were material, and that the policy was therefore void. It appears from the application that the insured was asked how much time he had lost from work through illness during the past five years, and that he answered "21 days, Oct. 1937," when he was treated for tonsillitis and had his tonsils removed. It appears from the evidence that the insured had had influenza twice during the past five years, and had lost time from his work. In answer to this question he did not disclose these facts. When the insured was asked what physicians he had consulted and had been treated by within the past five years, he answered that he had been treated by Dr. W. D. Mixon for tonsillitis in 1937. It appears that he had been treated and examined by Dr. Huey in May, 1937, and that at the time he complained that his heart was worse after exertion, and that this doctor also found some pus in his prostate, but found that he had a normal heart. The insured did not disclose any of this in his answer. Dr. Sikes testified that mild pains in the chest might indicate indigestion rather than heart trouble, and that the presence of such pains sometimes causes a person to think he has heart trouble when he only has indigestion, and that "those mild pains in the chest were not necessarily indicative of heart trouble." It also appears that Dr. Stephens treated the insured for influenza in 1936. The insured did not disclose this. It appears from the application that the insured answered that his regular physician was Dr. Stephens. He also informed the insurer, in answering the questions in the application, that he had had an appendicitis operation in 1931.

The insured died in October, 1939, from heart trouble. It appeared from the evidence that he was in apparent sound health at the time the policy was issued and the application was made.

Under all the evidence, considering that as to the insured's being in good health at the time of the application, it was a question for the jury whether the matters which the insured failed to disclose in the answers in his application, or about which he may have made false or incorrect statements, whether they were concealments or misrepresentations, were material to the risk.

10. It can not be said as a matter of law that the defendant had not acted in bad faith.

11. The verdict for the plaintiff for the face value of the policy and for damages and attorney's fees was authorized by the evidence. No error appears. The court did not err in overruling the motion for new trial. *Judgment affirmed. Sutton, J., concurs.*

FELTON, J., dissenting. I think the representations were false, and that some of them were material as a matter of law. I do not understand "materiality" to mean that the information has to be such as would undoubtedly lead to a refusal on the part of the company to assume the risk by issuing the policy, but only that the information might reasonably lead the company to refuse to accept the risk. The company is entitled to the true material facts about the insured before it enters into the contract. It seems to me that *New York Life Insurance Co.* v. *Hollis,* 177 *Ga.* 805 (171 S. E. 288), is controlling.