38803.   GILHAM v. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY.

DECIDED SEPTEMBER 6, 1961—REHEARING DENIED
SEPTEMBER 28, 1961.

*Sheats, Parker & Webb, Paul Webb, Jr.*, for plaintiff in error.
*Buchanan, Edenfield & Sizemore, Wm. F. Buchanan, Wm. H. Major*, contra.

JORDAN, Judge. In cases where the application for insurance is attached to and becomes a part of the policy, in order to avoid the policy for a misrepresentation of the applicant made in the application, the insurer need only show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk and this is true although the applicant may have made the representation in good faith, not knowing that it was untrue. *Preston v. Nat. Life &c. Ins. Co.*, 196 Ga. 217, 229 (26 SE2d 439, 148 ALR 897); *General Assurance Corp. v. Roberts*, 92 Ga. App. 834, 837 (90 SE2d 70).

This is the established law of this State as to false representations of a material fact in an application for insurance which is attached to and made a part of the policy. However, this rule is not to be confused with or to be given preference over another principle of equal import and gravity, and that is with respect to the applicant's failure to state material facts or the concealment of such facts in the application for insurance. As to this, the rule is thus: the mere failure to state a material fact or the concealment of such fact, when not done wilfully and fraudulently, will not void a policy of insurance. *German American Mut. Life Assoc. v. Farley*, 102 Ga. 720 (29 SE 615); *Watertown Fire Ins. Co. v. Grehan*, 74 Ga. 642, 656; *Mobile Fire Dept. Ins. Co. v. Miller*, 58 Ga. 421, 426; *Phillips v. New York Life Ins. Co.*, 173 Ga. 135 (159 SE 696); *Aetna Life Ins. Co. v. Conway*, 11 Ga. App. 557 (75 SE 915); *Empire Life Ins. Co. v. Jones*, 14 Ga. App. 647 (82 SE 62); *Mutual Life Ins. Co. v. Bolton*, 22 Ga. App. 566 (96 SE 442).

Thus while good faith is no defense when there is an untrue answer or misrepresentation of a material fact, good faith is a defense when there is simply a failure to state a material fact in an application which is attached to and made a part of the policy, or a concealment of such fact as would enhance the risk. In such instance, it is necessary that there be a fraudulent failure to state a material fact or wilful concealment thereof by the applicant. *Mutual Benefit Health &c. Assn. v. Bell*, 49 Ga. App. 640 (176 SE 124); *Metropolitan Life Ins. Co. v. Marshall*, 65 Ga. App. 696, 707 (16 SE2d 33).

Of course, the primary problem inherent in cases involving these two legal principles is in determining when one applies to the exclusion of the other. This task becomes especially difficult when the answer given to a particular question is literally correct but incomplete. Does such an answer simply amount to a failure to state that which is omitted, in which case the insurer must show a fraudulent and wilful concealment of a material fact to void the policy, or is the answer a representation that nothing exists other than that which has been stated, the good faith of the applicant thereby not being involved when the application is attached to and made a part of the policy? From an examina-

tion of cases dealing with this subject it is apparent that no general rule has, or for that matter, can be formulated since each case necessarily depends upon the particular phraseology of the individual questions and answers in the application in dispute. See for example *Mutual Benefit Health &c. Assn. v. Bell,* 49 Ga. App. 640, supra; *Metropolitan Life Ins. Co. v. Marshall,* 65 Ga. App. 696, 707, supra; *Jefferson Standard Life Ins. Co. v. Henderson,* 37 Ga. App. 704 (141 SE 498); *Nat. Life &c. Ins. Co. v. Preston,* 68 Ga. App. 614 (23 SE2d 526), in which diverse conclusions have been reached. Two cases are rarely if ever exactly alike, however. While legal principles must be applied in all cases, differing facts necessarily differentiate the rules of law applicable to each case.

The instant judgment under review is the granting of a summary judgment by the trial court on motion of the defendant, said motion being based on the contention that a finding was demanded as a matter of law that the instant application contained material misrepresentations. Accordingly the only issue before the court at this time is whether or not the record considered by the trial court did demand a finding as a matter of law that there were material misrepresentations in the application that changed the nature, extent and character of the risk, thereby voiding the policy. If the alleged misrepresentations were in fact merely omissions or concealments of material facts, there being no evidence which would demand a finding of fraudulent intent or wilful design, or if the application contained misrepresentations which could not, as a matter of law, be deemed material to the risk, a jury question thereby being presented, then the judgment of the trial court was erroneous.

It must be remembered that an issue as to material misrepresentations, like questions as to negligence, proximate cause and similar matters, should ordinarily be submitted to the jury. Only where the evidence as a whole excludes every reasonable inference but one may the court so rule as a matter of law. *Preston v. Nat. Life &c. Ins. Co.,* 196 Ga. 217, supra.

The defendant insurer has enumerated in its motion for summary judgment four questions and the respective answers thereto in the application on which its defense of material mis-

representation is predicated. Accordingly, keeping in consideration the legal principles above stated, we must now turn to the consideration of each individual question and answer which is in dispute.

Question 51 read as follows: "Have you had any ailment or disease . . . or (g) consulted a physician for any ailment or disease not included above?" Answer: "Yes. Splemacomty [sic] one attack 1948."

Under the record in this case the answer to this question was literally accurate although the insurer's agent incorrectly spelled the name of the operation, a splenectomy, in filling out the application. A physician had been consulted and a splenectomy had been performed on the injured and there was only one operation and that was performed in 1948. While the insured had disclosed the name of the operation rather than the disease or ailment as the question called for, it cannot be said that this was an untrue answer or a misrepresentation. The terms, "disease" and "ailment," must be considered in an application for insurance not in the light of scientific, technical definitions but in the light of the insured's understanding in connection with which the terms are employed in the application. *Nat. Life &c. Ins. Co. v. Falks,* 57 Ga. App. 384, 389 (195 SE 463) ; *Nat. Life &c. Ins. Co. v. Camp,* 77 Ga. App. 667, 671 (49 SE2d 670). At most the naming of the operation could only constitute a failure or omission to state the particular fact called for in the question. The insurance company was, of course, charged with this knowledge. They were also charged with the knowledge that there were obviously underlying physical reasons for the removal of the insured's spleen. Accordingly, the applicant having disclosed to the insurance company the existence of a major operation in his "health history," the insurer was then put on notice, if it so desired, to seek further information concerning the operation and the reasons for it or any specific information concerning it.

The record in this case indeed discloses that the home office requested the writing agent to furnish additional information concerning the splenectomy operation performed upon the insured, It is contended by the insurer that in this connection the agent

called Mrs. Gilham, the mother of the applicant, and asked her about the operation, specifically with reference to whether or not this was the only medical or surgical treatment the insured had received. The insurer also contends that the agent was advised by Mrs. Gilham that the insured had made a routine recovery from the operation and that he had not had anything else physically wrong with him. Both Mr. and Mrs. Gilham categorically denied, however, that the agent ever made any such call to them or any further contact with them after the signing of the application.

The record also shows that the applicant had signed an authorization, attached to the application, authorizing his doctor to give any information concerning his medical history to the insurer or any of its agents upon request. The agent, however, even though requested by the home office to secure additional information did not contact the insured's doctor, unquestionably the best source of medical information available. It is significant to note that the doctor made a full and complete disclosure of the insured's medical history when requested by the company, after the death of the insured, and with reference to same, testified he would have given the insurer the same information at any time upon request. It is an elementary principle that "In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, misconduct, or negligence of an agent of the company." *Stillson v. Prudential Ins. Co. of America,* 202 Ga. 79, 82 (42 SE2d 121). The answer to question 51 did not contain a material misrepresentation.

The next question in dispute, number 53, is as follows: "Have you ever received any bodily injury, undergone a surgical operation, or been an inmate of a hospital or sanitarium? (If so, give full details in space 56) : "The answer was "Yes, 2-19-48," and in space 56 the applicant explained as follows: "Egleston Hospital for operation. Splemacomty [sic] Dr. Hines Roberts, Atl., Ga., staff doctor in hospital, one week, complete recovery, no after effects." The answer to this question was also literally correct. While it is contended that it was a misrepresentation to state "complete recovery, no after effects," since the operation

did not effect a permanent cure of the insured, it is obvious that the quoted matter referred to the recovery from the operation itself and not to the condition for which the operation was performed, and as to this the uncontradicted evidence disclosed that the answer was true.

However, assuming but not deciding, that this answer was, as contended by the insurer, in effect a representation that the insured had never been an inmate in a hospital on any occasion other than the one disclosed, when in fact the record discloses that he had been admitted to a hospital on five other occasions, we do not think that such misrepresentation was, as a matter of law, material to the risk under the facts of this case. The record discloses that these other hospital admissions occurred prior to the 1948 operation and were either for minor troubles such as tonsillectomy and food allergy or, as testified to by the insured's doctor, were in connection with the research and diagnosis of the condition which resulted in the 1948 operation. In view of the disclosure of the major operation which occurred subsequently to these other hospital admissions, we do not think that it can be said as a matter of law that this misrepresentation, assuming that it was such, was material in that it changed the nature, extent or character of the risk. See *Commercial Cas. Ins. Co. v. Jeffers,* 69 Ga. App. 52 (24 SE2d 815). As to this matter a jury question was presented.

Question 54 read as follows: "Are you deformed, lame, maimed, or ruptured, or is there anything in your health history not mentioned elsewhere in this application?" Answer: "No."

It is not contended that the insured was either deformed, lame, maimed, or ruptured but that because of the many details concerning the insured's "health history" which were enumerated in the motion for summary judgment the negative answer to this all-inclusive question constituted a material misrepresentation.

The motion for summary judgment recited and it is uncontradicted in the record that the insured had been confined in a hospital on six occasions between April, 1944, and February, 1948; that he had made 99 visits to his doctor in the years 1944-57 inclusive; and that he had a medical history which included a tendency to hemorrhage, blood transfusions, anemia, Banti's

disease (the condition for which the 1948 operation had been performed), and the regular taking of vitamins and Methiscol, a prescription drug to improve liver function. The record in this case discloses, however, that between the time of the splenectomy in 1948 and the date of the application for the instant policy of insurance, there were no operations, no hospitalizations, no hemorrhages, no transfusions, and no unusual or extraordinary incidents listed in the notes of the insured's doctor concerning the insured's health. The insured, subsequently to the operation, was apparently a healthy, active, normal youngster. In high school he played in the band and never missed a football game. He played baseball. The insured had taken flying lessons and was flying airplanes (a fact noted on the application) in the year just before his death. On January 6, 1958, only five days before the application for the insurance policy was made, the insured's doctor gave him a civil aeronautics physical examination and issued him a medical flying certificate. The certificate issued by the insured's doctor had on it a space for the entry of "physical defects or limitations." The only limitation listed on this certificate by the doctor was "splenectomy, 2-19-48."

While good faith is no defense to a false representation, it is our opinion that an answer to the above question could only be based upon the plaintiffs' actual knowledge of the insured's "health history" and their understanding and interpretation of this question. The term "health history," like the terms "good health" and "illness," must also be considered, in an application for insurance, not in the light of scientific, technical definitions but in the light of the insured's understanding in connection with which the terms are employed in the application. See in this connection, *Nat. Life &c. Ins. Co. v. Falks*, 57 Ga. App. 384, supra; *Nat. Life &c. Ins. Co. v. Camp*, 77 Ga. App. 667, supra.

Therefore, in view of the broad and general nature of this question and in the absence of any evidence in the record as to the plaintiffs' interpretation and understanding of this question, and in consideration of the fact that the plaintiffs had already disclosed the existence of the splenectomy operation and did not have actual knowledge of the name or nature of the disease

(Banti's disease) with which the insured was suffering other than that disclosed to the insurer's agent, or of various other matters in his medical history, we do not think that the negative answer to this question can be said as a matter of law to constitute a misrepresentation, material or otherwise. This is an issue of fact for a jury's determination.

In this regard it is also significant to note that this question simply called for a "yes" or "no" answer and did not ask for details in the event of an affirmative answer. Accordingly, an affirmative answer could only have motivated the insurance company to make further inquiry as to the nature of the thing or things in the "health history" of the applicant upon which the answer was predicated. Since, as pointed out in our discussion of question number 51, the home office of the company had already requested their writing agent to secure additional information concerning the medical and surgical history of the applicant and since there exists an issue of fact as to whether or not this was done, it is our opinion that such is material in the consideration of the issue as to whether or not this was in fact a material misrepresentation.

The final question read as follows: "State names and addresses of physicians you have ever consulted and give the occasion by reference to question numbers and letters above." Answer: "Dr. Hines Roberts, c/o Egleston Hospital, Atl., Ga."

The record discloses that this answer, when considered with the entire application, was also literally correct. The uncontradicted testimony was that for the first 18 or 19 months of the insured's life, he was perfectly healthy and normal. During this time he was seen by one or two pediatricians for the usual childhood care. There were no occasions to name or refer to these pediatricians in the application and it cannot be contended that the failure to name them could constitute a material misrepresentation. From the time the insured developed any serious trouble at about two years of age until the date of his death, he was under the sole care of Dr. Hines Roberts whose name and address were disclosed to defendant. The only other doctor who had anything to do with the insured during this period of time was Dr. Lon Grove. While his name was not given to defendant, he was

elsewhere in the application identified as a staff doctor of Egleston Hospital. Dr. Grove performed the splenectomy operation in 1948 on the insured under the direction of Dr. Roberts and the insurer could have easily secured his name if they had in fact desired to confer with him. The material disclosure was the existence of another doctor who had performed an operation on the insured.

It is thus seen that the record before the trial court on motion for summary judgment did not demand the finding as a matter of law that there were material misrepresentations in the application for insurance which changed the nature, extent and character of the risk. Accordingly, there being issues of fact for determination by a jury, the judgment of the trial court sustaining the motion for summary judgment in favor of the defendant insurance company was erroneous and must be reversed.

*Judgment reversed. Townsend, P. J., and Frankum, J., concur.*