45288. FIDELITY BANKERS LIFE INSURANCE
COMPANY v. RENEW et al.

ARGUED APRIL 8, 1970—DECIDED JUNE 8, 1970.

*Reinhardt, Ireland, Whitley & Sims, Glenn Whitley,* for appellant.

*Sutton, Kelley & Pittman, Thomas H. Pittman, Frank Sutton,* for appellees.

JORDAN, Presiding Judge. 1. The motion to dismiss the appeal is without merit.

2. The insurer, in seeking a directed verdict in the lower court, argued that the evidence conclusively disclosed material misrepresentations in the application, because the insured affirmatively answered the question, "Are you now in good health?" and negatively answered the question, "Have you ever had, or been told you had, any of the following diseases, disorders, or complaints. (h) Back pain, sciatica, arthritis, or other bone, muscle or joint disorder?" despite the fact that for a period of a year and a half or two years he had suffered severe pain in his lower right leg, which had become progressively worse, and was of such severity that he could not climb stairs or go up any incline without stopping.

Under the Georgia Insurance Code an insurer is entitled to rely on the statements of an applicant as true, and incurs no legal liability, except as set forth in the policy, by virtue of any untrue statements, declarations, or representations relied upon in good faith by the insurer. Ga. L. 1960, pp. 289, 659 (*Code Ann.* § 56-2407 (4)). Misrepresentations, omissions, conceal-

ment of facts, and incorrect statements do not prevent recovery unless (1) fraudulent, (2) material to acceptance of the risk or the hazard assumed by the insurer, or (3) if the true facts had been known, the insurer in good faith would not have issued the policy, or would not have issued a policy in as large an amount or at the premium rate as applied for, or would not have provided coverage for the hazard resulting in the loss. Ga. L. 1960, pp. 289, 660 (*Code Ann.* § 56-2409).

In *Gilham v. National Life &c. Ins. Co.,* 104 Ga. App. 459 (122 SE2d 164), this court recognized the existence of two rules for application, and the difficulty of applying one to the exclusion of the other under a given set of circumstances. These rules, succinctly stated, are (1) an affirmative representation in an application which is made a part of the policy, which, if shown to be false and material, in that it presented a false picture of the nature, extent, or character of the risk, cannot be overcome by a showing that the applicant answered in good faith, not knowing that it was untrue, and (2) the mere failure to state a material fact, or the concealment of a material fact in which event the good faith of the applicant is relevant, in that the failure or concealment must be fraudulent or wilful. In the *Gilham* case the court also recognized the established rule that the question posed in an application must be evaluated in the light of the meaning conveyed to the insured, regardless of the true or technical meaning. While there are valid distinctions between the requirements for a summary judgment and a directed verdict, and the *Gilham* case was here on summary judgment, it is also settled law in both situations that the movant cannot prevail as a matter of law if there are genuine unresolved issues of fact for jury determination. Further, as was recognized in the *Gilham* case, it is well settled that an issue as to material misrepresentations is ordinarily a matter for jury determination.

The evidence on which the insurer relies to support the motion for a directed verdict consists of the applicant's disclosure of pain in his legs, or one of them, after exercise, to an attending physician, on or about May 23, 1968, some two weeks after he signed the application, and after he had gone to a hospital com-

plaining of chest pains, and then only in response to specific questioning by the physician in regard to leg pains, the presence of which the physician confirmed by examination revealing a diminished femoral pulse, and the absence of any popliteal pulse or any pulse at the foot. In medical terms the lameness after use of the legs is described as progressive intermittent claudication and is indicative of generalized vascular disease. A lay witness did testify that the applicant, who was active in his job, had complained that the concrete was rough on his feet and legs, and in November of 1968 the insurance company received a report from a physician, who did not testify, stating that in March of 1967 he treated Alper for vascular insufficiency of the legs. In response to a request before issuing the policy this physician reported other treatment, but nothing to disclose that the patient had complaints of pain in his legs. There is no explanation in the evidence of the discrepancy in his reports.

We regard the unexplained affirmative answer to the general question of good health, and the unexplained negative answer to the question of knowledge of back pain, sciatica, arthritis, or other bone, muscle or joint disorder as answers coming within the second rule stated above, i.e., a failure to furnish or a concealment of material information bearing on the risk, and in order to reach the vital issue of whether the answers were fraudulent or wilful, we assume, without so deciding, that the evidence is of probative value to establish as a fact that the applicant had suffered leg pains intermittently during the period, and that he was aware of these symptoms when he completed the application and answered the particular questions referred to above in a manner requiring no explanation on the application.

The medical examiner who posed the questions on the application to Alper and who recorded his answers did not specifically seek information about leg pains, and the attending physician some two weeks later, when Alper went to the hospital with chest pains, made it clear that he found out about the leg pains only after specific questioning. He characterized Alper as a rather stoic individual who did not believe, even after being hospitalized for chest pains, that he required further hospitalization or was seriously ill, and he pointed out that Alper, even

when faced with the opinion that he had probably suffered a heart attack on or about May 23rd, insisted he was well enough to leave the hospital, and did leave the hospital on May 31st contrary to the advice he received. Such action would indicate that the insured considered such symptoms of a minor nature not affecting his general well-being. We think a jury could determine that Alper in good faith furnished what he considered to be true answers to the two questions posed on the application, and we reject the contention that the evidence demands a verdict for the insurer on the basis of wilful or fraudulent misrepresentation.

3. The insurer also insisted in the trial court, in seeking a directed verdict, that there is an absence of any evidence disclosing an insurable interest of the beneficiaries, whom the insurer approved as beneficiaries on June 28, 1968, as business associates of the insured, in lieu of the original corporate employer of the insured. While this ground of the motion as stated to the trial court is restated in the brief before this court, it is unsupported in the brief by any citation of authority or argument and is therefore deemed to have been abandoned. See Rule 17 (c) (2). We note that the plaintiffs, as appellees, rely on the provisions of the Georgia Insurance Code (Ga. L. 1960, pp. 289, 657; *Code Ann.* § 56-2404), the ruling in *Chapman v. Lipscomb-Ellis Co.*, 194 Ga. 640 (1) (22 SE2d 393, 143 ALR 286), the fact that the evidence clearly discloses an insurable interest in the original corporate owner and beneficiary, and provision of the policy allowing the owner, during the life of the insured, to designate and change direct and contingent beneficiaries.

4. The second and third enumerations assert error by the trial judge in charging the jury on the substance of the rules appearing in § 56-2419 of the Insurance Code (Ga. L. 1960, pp. 289, 667; *Code Ann.* § 56-2419), and the rules appearing in *Code* §§ 20-702 and 20-704 (5). Although we recognize that the construction of an insurance contract is, like any contract, ordinarily a matter for the court (*Code* § 20-701) and in this sense the rules may be regarded as inappropriate for the jury, we do not regard the giving of the rules in charge in this case as disclosing harmful error for any reason argued and insisted

upon. It is obvious that the real issue, under the pleadings, the evidence, and as made clear to the jury under the charge, in respect to recovery of the face amount of the policy, is that of wilful misrepresentation in the application for the insurance.

5. The fourth and fifth enumerations cover the related issues of whether the court erred in instructing the jury on the issue of bad faith in denying the claim, thereby authorizing the jury to assess damages for bad faith and attorney's fee (see *Code Ann.* § 56-1206) and whether the evidence authorizes a judgment on the verdict including damages for bad faith and attorney's fees. The whole picture, as developed by the insurer after the fact of death and adduced in evidence as a basis for denying the claim, discloses a man who, in applying for coverage, represented that he was in good health, but one who, perhaps as early as March, 1967, suffered from progressive intermittent claudication, who named only one doctor in his application but who in fact received treatment from another, and who within two weeks after applying for insurance and before the policy was issued, probably suffered a heart attack, and was treated in a hospital from May 23 to May 31, 1968, without knowledge of the then prospective insurer, the insurer thereafter having issued the policy for delivery to the insured without being informed of these events, although known to its salesman at the time of delivery, a man whose questionable insurability on account of vascular disease is further illustrated by treatment from June 23 to July 12, 1968, and his death on August 17, 1968, from heart failure.

As already ruled upon, the issue of misrepresentation was for jury determination, and there being an issue for jury determination, can it be said that the insured's denial of the claim was frivolous and unfounded? The evidence, although it does not authorize a directed verdict for the insurer, would have authorized a determination that the insured, in applying for coverage, wilfully concealed symptoms indicative of the condition which brought about his death. It is settled law that "bad faith" as the term is used in § 56-1206 of the Georgia Insurance Code, means any frivolous or unfounded refusal to pay a claim, and, among other rules, if the evidence can be

said to authorize a finding supporting the contentions of the defendant, a finding of bad faith is not authorized. See *Royal Ins. Co. v. Cohen,* 105 Ga. App. 746 (3) (125 SE2d 709).

In our opinion, the trial judge erred in submitting the issue of bad faith and attorney's fees to the jury, and the evidence does not authorize the verdict for damages for bad faith and attorney's fees.

6. The evidence supports a verdict for the plaintiffs only for the face amount of the policy, and for this reason the costs of this appeal are taxable against the appellees.

*Judgment affirmed on condition that the plaintiffs write off the penalty for bad faith and attorney's fees; otherwise reversed. Pannell, J., concurs. Eberhardt, J., concurs in the judgment.*

## CORRECTIONS.

Page 182, lines 6 and 5 from bottom, please read "Roscoe Pound" instead of "Roecoe Pound."

Page 804, lines 4 and 5 from top, after "Edward W. Killorin" insert "for appellees."