Jacquelyn Ann HAIRSTON, Plaintiff,

v.

**JOHN HANCOCK MUTUAL LIFE IN-
SURANCE COMPANY, Defendant.**

**Civ. A. No. 13199.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 8, 1970.

Rich, Bass, Kidd & Broome, Decatur,
Ga., for plaintiff.

Powell, Goldstein, Frazer & Murphy,
Atlanta, Ga., for defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

MOYE, District Judge.

This is a suit on a life insurance policy providing death benefits in the amount of $50,000 issued on the life of plaintiff's deceased husband, the plaintiff being designated as beneficiary therein. The policy and all attachments, including the application for insurance, were attached to and incorporated in the plaintiff's complaint. The policy was issued February 15, 1968.

The insured died on January 21, 1969. The cause of the insured's death, as shown by the death certificate, was acute myocardial infarction due to arteriosclerotic heart disease.

Plaintiff brought suit for the face amount of the policy, plus 25 percent in penalties, plus attorneys' fees in the Civil and Criminal Court of DeKalb County, Georgia (Civil Division), which suit was removed to this Court by reason of the diversity of citizenship of the parties, the matter in controversy exceeding the jurisdictional amount.

The complaint shows that insured died within the 2-year period prior to incontestability. The defendant seeks to avoid liability on the policy by reason of actual misrepresentation of material facts and the concealment of material facts in the application for insurance and further alleges the continuing tender of all premiums which have been paid upon said policy.

The depositions of the plaintiff, of the insurance company examining physician, Dr. C. M. Scheinbaum, and of the insured's family physician, Dr. E. Van

**644**

Buren, were taken. The defendant thereafter filed its motion for summary judgment, which was opposed by the plaintiff and that motion is now before this Court.

Upon deposition, Dr. Van Buren testified with respect to a visit to him by the insured on February 1, 1968, that:

"on 1–29–68 patient (the insured) was awakened about 2 a. m. from a sound sleep with severe pressure sensation in the anterior chest wall, radiating downward in the midline over the manubrium and upper epigastric area. There was no sweating or pallor. He denies nausea and vomiting. His review of systems was nonrevealing."
* * * "My impression at that time was: Itching was probably on the basis of angioneurotic edema. The chest pain could also have been on the basis of angioneurotic edema because it was relieved promptly after taking Prednisone. The question arises, however, as to whether this might have been an acute myocardial infarction."

The physical examination taken at the time showed a normal pulse and Dr. Van Buren stated that the insured was to have x-rays of the chest and EKG because of the chest pain lasting from 2 a. m. until 9 a. m.

On the application for insurance submitted to the defendant and dated February 15, 1968, two weeks after the episode described above, the insured gave the following answers to questions appearing on the application for insurance:

*Question 3(d), Part B:* "Has person proposed for insurance ever consulted or been treated by any physician or practitioner for, or had known indication of: Heart Disease, Pain in the chest, Coronary Artery Disease, Angina Pectoris or Rheumatic Fever?"

William B. Hairston's answer was "No".

In fact, William B. Hairston had undergone consultation and treatment with Dr. E. Van Buren on February 1, 1968 for pain in the chest and heart disease. On February 9, 1968, Dr. E. Van Buren placed him on nytroglycerin for relief of his chest pains, told him that he was suffering from heart disease and further told him it might be necessary to consult with a cardiologist. (Deposition of Dr. E. Van Buren, pp. 4–9, 18–19, 29).

*Question 4(c), Part B:* "Has person proposed for insurance ever: Had X-ray, Electrocardiogram, Blood or other medical studies?"

William B. Hairston's answer was "yes, EKG and X-ray routine in Army normal".

In fact, on September 11, 1969, September 6, 1966, and again on February 7 and 8, 1968, William B. Hairston had had electrocardiograms, a variety of x-rays and associated laboratory tests. (Deposition of Dr. E. Van Buren, pp. 4–9).

*Question 5(a), Part B:* "Has person proposed for insurance during the past five years, OTHER THAN as stated above: Consulted, been treated or examined by any physician or practitioner?"

William B. Hairston's answer was "No".

In fact, on September 6, 1966, February 1, 1968, and February 9, 1968, William B. Hairston had been treated by or consulted with Dr. E. Van Buren. (Deposition of Dr. E. Van Buren, pp. 5–9).

The case of Fidelity Bankers Life Insurance Co. v. Renew, 121 Ga.App. 883, 176 S.E.2d 103 (1970), contains the applicable rules to be applied to the factual situation before the Court (the parties advising the Court that there is no precisely in-point decision of the Georgia Supreme Court). In that case it was pointed out that, under the Georgia Insurance Code, an insurance company is entitled to rely on the statements of an applicant as true, and incurs no legal liability except as set forth in the policy

by virtue of any untrue statements, declarations, or representations relied upon in good faith by the examiner. Georgia Laws 1960, pp. 289, 659; Georgia Code Annotated, section 56–2407(4). Misrepresentations, omissions, concealment of facts and incorrect statements do not prevent recovery *unless* (1) Fraudulent, (2) material to acceptance of the risk or the hazard assumed by the insurer, or (3) if the true facts had been known, the insurer, in good faith, would not have issued the policy, or would not have issued a policy in as large amount or at the premium rate as applied for, or would not have provided coverage for the hazard resulting in the loss. Ga. Laws 1960, pp. 289, 660; Ga.Code Ann. section 56–2409. In this case the defendant's motion for summary judgment contains the unchallenged affidavit of its Vice President and Counsel that "In considering the application for insurance of William B. Hairston, had the true and correct facts as to his visits to Dr. Van Buren and his x-rays, electrocardiograms and other medical tests been disclosed, they would have been taken into consideration in accepting or rejecting of the application, and if accepted, in determining the amount of the premium." In other words, that information was material to the acceptance of the risk by the insurer.

The Georgia Court of Appeals in the *Renew* case, relying on Gilham v. National Life and Accident Company, 104 Ga.App. 459, 122 S.E.2d 164, stated the rules to be applied to determine whether an insurance company may avoid its liability by reason of false and misleading answers in an application for insurance:

"These rules, succinctly stated, are (1) an affirmative representation in an application which is made a part of the policy, which, if shown to be false and material, in that it presented a false picture of the nature, extent, or character of the risk, cannot be overcome by a showing that the applicant answered in good faith, not knowing that it was untrue, and (2) the mere failure to state a material fact, or the concealment of a material fact in which event the good faith of the applicant is relevant, in that the failure or concealment must be fraudulent or wilful."

The deceased's answers to Questions 3(d) and 5(a) of the application for insurance and his statement immediately preceding his signature that "the. foregoing statement and answers are complete, true, * * * " were affirmatively false representations as contemplated in rule (1) of the *Renew* case. These statements were material; they clearly painted a "false picture of the nature, extent or character of the risk" and the defendant is entitled to avoid liability under the policy by reason thereof.

The insured's answer to Question 4(c), Part B, was incomplete and concealed the fact that the insured had an x-ray and an electrocardiogram within approximately a week prior to the insurance examination. Considering the fact that the insured had no difficulty in referring in the application to a circumcision at birth in answer to the question, "Has person proposed for insurance ever had any surgical operation?", the fact that the insured's life insurance picture showed several policies ranging from approximately $637 to $5,000, apart from the $50,000 policy with the defendant (plaintiff's deposition page 6ff.), and the fact that the deceased was actually taking nitroglycerin tablets for heart disease at the time he took the insurance examination, it would seem that the affirmative answer in paragraph 4 of the application specifically referring to an "EKG and x-ray routine in Army normal", but not to those taken less than two weeks before, was a willful and fraudulent concealment of facts under the rules in the *Gilham* and *Renew* cases, but the Court is predicating its grant of summary judgment upon the affirmatively false answers to paragraphs 3(d), 5(a) and the certification to the insurance application just above the insured's

signature (it was conceded by counsel for plaintiff at the hearing on the motion that the signature on the application was that of the insured, and that he was an adult—according to the application, he was 39 years of age when he signed the application).

For the reasons set forth herein, therefore, defendant's motion for summary judgment is hereby granted.